# Exhibit 4

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| NIA MILLS,<br><br>   Plaintiff,<br><br>   v.<br><br>WILLIAM ALLEN CONNELLY, ET AL.,<br><br>   Defendants. | Case No. 22-193-BAJ-EWD<br><br>Judge Brian A. Jackson<br><br>Magistrate Judge Erin Wilder-Doomes |

## DECLARATION OF NIA MILLS

In accordance with 28 U.S.C. § 1746, I, Nia Mills, hereby state and declare the following which is based on my personal knowledge:

1. I am a U.S. citizen and the daughter of a U.S. military veteran. I currently live in Orlando, Florida, with my two children, whom I share with my partner, Cory Catchings.

2. On March 15, 2021, I rented a Ford Mustang convertible from Hertz to travel to Florida for a birthday celebration and then to Houston, Texas to purchase a used car from a dealership. My original return date for the rental vehicle was March 17, 2021.

3. On or around March 16, 2021, I contacted Hertz via telephone to extend the length of my vehicle rental to March 25, 2021. Hertz granted my request.

4. On or around March 25, 2021, I contacted Hertz a second time to extend the length of my vehicle rental to March 26, 2021. Hertz granted my request.

5. On March 26, 2021, I was driving in my rental vehicle along Interstate 10 in Louisiana to get to a car dealership in Houston, Texas. The only other person in the vehicle was my partner, Cory Catchings. I planned on purchasing a used car in Houston, Texas and returning the rental vehicle the same day at a Hertz office in Houston as given Cory

-1-

Catchings's ongoing recovery from surgery to his skull, I was the only driver and I could not be saddled with two vehicles and additional rental charges.

6. As I passed through Port Allen, Louisiana, I was pulled over by Defendant William Allen Connelly (Defendant Connelly) for an alleged minor traffic violation.

7. During this traffic stop, I was asked by Defendant Connelly to exit the vehicle. At some point, I was handcuffed and seated on the ground along the side of the road. In total I believe I was at the roadside for between forty-five minutes to an hour.

8. I was then handcuffed and ordered to enter a sheriff's vehicle and driven to the Narcotics Office of the West Baton Rouge Sheriff's Office. When I arrived at the Sheriff's Office, around 2 PM, I was un-handcuffed and allowed to use the restroom while Defendant Connelly waited outside the door. Once I finished, Defendant Connelly handcuffed me again, this time to a bench that stood in the hallway of the Sheriff's Office. Defendant Connelly and the other officers present went into a room to my right. The door to this room remained open. I could hear my partner, Cory Catchings, crying behind a closed door to a room in front of me.

9. I remained handcuffed to the bench and sat there, alone, for several hours. There was no one else seated in the hallway with me. I cannot now recall exactly how many hours it was.

10. Defendant Connelly did not speak to me again other than telling me not to talk or I would go to prison, until he returned to tell me "sign this if you want your money back." I signed a form, still handcuffed, then he went back into the room.

11. Much later, Defendant Connelly returned. He told me I was "going to be getting ready to go," un-handcuffed me, then brought me into the room with the other offices. There, he

-3-

told me I had to provide the passwords to my phone and my laptop in order to leave with my phone and laptop. I felt like I had no choice, so I provided my passwords.

12. Defendant Connelly searched through my phone and laptop, which took about 15 to 20 minutes.

13. At the Narcotics Office, Defendant Connelly did not formally interrogate or interview me or take a statement from me.

14. After the search concluded, I voluntarily told Defendant Connelly that I had only been trying to get to Houston to buy a car. That was the extent of any conversation had with Defendant Connelly.

15. After this exchange, Defendant Connelly gave me my backpack, which contained my phone, my laptop, and my partner's X-Box. Then, I left the office and walked to the closest store, a CVS, so I could charge my phone and figure out a way to get back home. A lot of men pulled up alongside me as I was walking and cat-called. I was scared. I waited at the CVS between thirty minutes to an hour for an Uber back to Jackson, Mississippi, which arrived at about 6:15 PM.

I, NIA MILLS, verify under penalty of perjury that the foregoing is true and correct.

Date: June 27, 2025

Signed by: *Nia Mills*
Nia Mills