# Exhibit 20

```
                UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF LOUISIANA
                INDEX NO.:  22-193-BAJ-EWD
```

NIA MILLS,

    Plaintiff,

vs.

WILLIAM ALLEN CONNELLY; JOHN GAUDET;
VANCE MATRANGA JR.; SHERIFF MICHAEL
CAZES; JOHN DOES 1-4,

    Defendants.
_____

    REMOTE VIDEOTAPED DEPOSITION OF JOHN BARKER

  DATE TAKEN:  2/19/2025

  TIME:        10:58 a.m. - 3:16 p.m.

    (Based on Time Zone from Notice)

  WITNESS APPEARED BY:  Video Teleconference

Reported By:
BRITTANY BRIDGES, AAERT No. 1607
Notary Public for the State of Florida

1            P R O C E E D I N G S

2   Deposition taken before BRITTANY BRIDGES, AAERT No. 1607,

3   Digital Reporter, State of Florida pursuant to Notice.

4            VIDEOGRAPHER:  We are on the record.  This is the

5   remote video recorded deposition of John Barker.  Today is

6   February 19th, 2025, and the time now is 10:58 a.m. Central.  We

7   are here in the matter of Nia Mills versus William Allen

8   Connelly, et al.  My name is John Jensen, remote video

9   technician, on behalf of U.S. Legal Support.  I am not related

10  to any party in this action, nor do I have a financial interest

11  in the outcome.  At this time, will the reporter, Brittany

12  Bridges, on behalf of U.S. Legal Support, please swear in the

13  witness.

14            COURT REPORTER:  Yes, sir.  We are on the record.  It

15  is 11:58 Eastern Standard Ti- -- Eastern Standard Time, 10:58

16  Central Standard Time, and I believe it is 9 a.m. Pacific

17  Standard Time, on February 19th, 2025.  My name is Brittany

18  Bridges.  I am a notary licensed by the state of Florida, and

19  I'm also a court reporter with U.S. Legal Support.  Our

20  headquarters are located in Houston, Texas.

21            I'm located in Brandon, Florida.  I will be

22  administering the witness -- the oath to the witness today

23  remotely.  The audio and video recording will continue to take

24  place 'til all parties agree to go off the record.  Private

25  conversations and our attorney-client interaction should be held

1  outside of the presence of the remote interface.  This is the

2  reported proceeding of John Barker taken by counsel for the

3  plaintiff, Ms. Vanessa Domenichelli, in the matter of Nia Mills

4  versus William Connelly, filed in -- I don't think I have a

5  notice for this, but Louisiana?  It's filed in Louisiana?

6          MS. MENZA:  Middle District of Louisiana.  And Ms.

7  Bridges, I'll be taking the deposition.

8          COURT REPORTER:  Okay.  Thank you for that, Ms. Menza.

9  This proceeding is being conducted remotely via RemoteDepo Pro.

10 The parties agree that an oath will be administered to the

11 witness and I will create an audio record of this proceeding,

12 after which a transcriptionist will produce a final transcript

13 of order.  In accordance with applicable law, the transcript

14 will be provided to the witness for review, correction, and

15 signature.  Will the parties please state your appearance and

16 agreement for the record, beginning with plaintiff.

17         THE WITNESS:  (Indiscernible.)

18         MS. MENZA:  We're to state our appearance for the

19 record, so I'm gonna start.  This is Marjorie Menza on behalf of

20 Nia Mills with the Social Justice Legal Foundation.

21         MS. DOMENICHELLI:  My name is Vanessa Domenichelli on

22 behalf of the plaintiff Nia Mills for the So---

23 Social Justice Legal Foundation, and I agree.

24

25         MS. LUBIN:  This is Emily Lubin on behalf of Plaintiff

John Barker
February 19, 2025

1  Nia Mills with the Southern Poverty Law Center, and I also
2  agree.
3          MR. WIXOM:  I'm Jason Wixom on behalf of former
4  Sheriff Mike Cazes, William Allen Connelly, and Sheriff -- I'm
5  sorry, John Gaudet.  I agree.
6          THE WITNESS:  John Barker.  I'm to be the witness
7  today.
8          COURT REPORTER:  Thank you, everyone.  Mr. Barker,
9  because you and I are in two different places of the country
10 today, do you consent to being placed under oath by me?
11         THE WITNESS:  I do.
12         COURT REPORTER:  Thank you, sir.  And prior to going
13 on the record, Mr. Barker did present to me his Louisiana
14 driver's license, and I was able to confirm his identity that
15 way.  At this time, Mr. Barker, would you go ahead and state
16 your name and spell it.
17         THE WITNESS:  John Barker, J-O-H-N B-A-R-K-E-R.
18         COURT REPORTER:  And I'm sorry, Mr. Barker, it was --
19 it's John Barker, correct?
20         THE WITNESS:  Correct.
21         COURT REPORTER:  Okay.  Sorry.  I thought I heard
22 Adam.  I just wanted to make sure I heard you correctly.  And,
23 Mr. Barker, where are you currently?  City and state.
24         THE WITNESS:  Port Allen, Louisiana.
25         COURT REPORTER:  All righty.  Thank you, sir.  Would

1  you go ahead and raise your right hand for me.  Do you solemnly

2  swear or affirm the testimony you give in this matter will be

3  the truth, the whole truth, and nothing but the truth?

4          THE WITNESS:  I do.

5          COURT REPORTER:  Thank you, sir.  You may put your

6  hand down.  Please be advised that during the course of this

7  proceeding I may be marking exhibits as they are presented in

8  reference.  Kindly allow the necessary time to complete this

9  task for the record.  Thank you.  And Counsel, you may proceed.

10          MS. MENZA:  Thank you.  I just -- I know we're on the

11 record, but I'm having a difficult time hearing Mr. Barker.  I

12 don't know if anyone else is, but I see that sometimes there's a

13 red signal going off when he speaks, and I can start now, but we

14 might need to troubleshoot audio.

15          COURT REPORTER:  I'm he -- I -- I -- I'm hearing what

16 you're hearing.  He does sound a little far away.  Mr. Barker,

17 sometimes if you -- even the littlest bit when you back away, it

18 causes a problem.  So if you can just speak as closely as you

19 can into the -- into the microphone or wherever you're at.

20          THE WITNESS:  I will.  I'll keep it in mind.

21          MS. MENZA:  That's much better right there.  Okay.

22 Thank you.  Okay.

23                      JOHN BARKER

24 was called as a witness and, after having been first duly sworn,

25 testified as follows:

John Barker
February 19, 2025

1                      EXAMINATION

2   BY MS. MENZA:

3       Q.   Okay.  So, good morning.  My name is Marjorie Menza.
4   I'm an attorney at the Social Justice Legal Foundation, and as I
5   said earlier, I represent Ms. Nia Mills, who's the plaintiff in
6   the lawsuit you just heard the court reporter name.  Would you
7   please, for my sake, state your name clearly for the record.

8       A.   John Barker.

9       Q.   Thank you.  And would you also state the town and
10  state where you reside?

11      A.   I reside in Plaquemine, Louisiana.

12      Q.   Got it.  Thank you.  So I'm just gonna start out by
13  talking through some deposition logistics, some of which you may
14  have already heard before, but I'm just gonna go through it so
15  we are on the same page.  Just so you -- you were just sworn in
16  and you heard that your testimony is under oath and any false
17  testimony carries the penalty of perjury in the United States.
18  Does that make sense to you?

19      A.   It does.

20      Q.   Great.  Now, as you can see, the deposition's being
21  recorded, and that is so both parties have a clear record of
22  what is said today.  We have a digital recording, which Ms.
23  Bridges, our reporter, will review after this deposition to be
24  sure that it is accurate.  To enable her, you and I both have to
25  be careful not to talk over each other or mumble or say uh-huh

1  continuing pattern, I could bring these documented instances to
2  the sheriff or to someone, you know, IA and say, hey, this is
3  what I've been dealing with.  I've documented these different
4  cases.
5      Q.   Got it.
6      A.   Something needs to happen.
7      Q.   Okay.  Okay.  And so you remember the day a little
8  bit.  Do you remember seeing the Ford Mustang, the silver
9  Mustang in the sheriff's in the parking lot or --
10     A.   No.
11     Q.   Okay.
12     A.   You just told me that.  I didn't remember that at all.
13     Q.   Okay.  And so -- and have you ever heard of any
14 deputies sort of getting the keys to the car instead of calling
15 Roadrunner, just driving the car over to Roadrunner?
16     A.   Yes.
17     Q.   You -- that happen sometimes?
18     A.   Frequently?
19     Q.   Frequently.  Okay.  And how would that -- like if that
20 happens, does that deputy say, hey, I'm taking this car?  Like,
21 is there any record of it?
22     A.   Usually there probably wouldn't be a record of it, but
23 he would be -- another deputy would have to be notified because
24 there's a unit that needs to be driven back to the office as
25 well.  So you have to make arrangements.

1    Q.   To go pick him up.  Okay.  It's not like it's somebody
2  who lives next door to wrecker yard or maybe so I'd say, say,
3  I'm gonna drive it over and then you pick me up and bring me
4  back to the office.
5    A.   That -- yeah, potentially, yes.
6    Q.   And so would there be a unit associated -- like would
7  there be a record associated with that, or is it just talking to
8  each other?
9    A.   No.  No.  It would -- it would just be, you know,
10  if -- if two guys were on scene and they needed a vehicle
11  driven, they could call the office and two people would ride in
12  one unit so one could drive the vehicle back to the office or
13  something like that.
14    Q.   Got it.  Okay.  Cameras.  Are there cameras outside
15  the safe?  Were there cameras outside the safe?
16    A.   There was a camera positioned to monitor the safe.  I
17  don't know if it's still operational or not, and I do not
18  know -- if it's not operational, I don't know when that
19  occurred, but, yes,(indiscernible) was on.
20    Q.   And was the footage reviewed?
21    A.   For?
22    Q.   Anything?  I mean, what was -- what happened to that?
23  To the footage that the camera was generating?
24    A.   So, it was maintained for approximately 30 days, but
25  if there was ever an incident, then it could be reviewed.

```
 1      Q.   Got it.
 2      A.   But that to my knowledge, there's never you know, any
 3 incidents.
 4      Q.   So after 30 days, it would be rewritten essentially?
 5      A.   Correct.
 6      Q.   Okay.  And how about cameras at the old office?  Were
 7 there cameras at the old office within the hallways or any
 8 places?
 9      A.   Yes.
10      Q.   Where were they?  Do you remember?
11      A.   Different places.  We had exterior.  Excuse me --
12 exterior doors and at different points inside the building.
13      Q.   What about on the parking lot?
14      A.   Yeah.  The exterior door covers some of the parking
15 lot.
16      Q.   Just some, but not all?
17      A.   No.
18      Q.   Okay.  And do you know what the policy -- the
19 maintenance policy was or how long it was retained the video
20 from those cameras?
21      A.   I don't think there was a policy on any of that.
22      Q.   Okay.  Well, you said the safety -- the -- the safe it
23 was every 30 days it was overwritten.  You don't know about
24 the -- I'm wondering if it's same?
25      A.   So those would have been on the same system, so it
```

```
 1                  CERTIFICATE OF REPORTER

 2

 3   STATE OF FLORIDA                )
                                     )
 4   COUNTY OF  HILLSBOROUGH         )

 5

 6        I, BRITTANY BRIDGES, AAERT No. 1607, Digital Reporter,

 7   State of FLORIDA, do hereby certify that I was authorized to and

 8   did electronically report the Videotaped Deposition of JOHN

 9   BARKER; that JOHN BARKER was duly sworn on the date indicated;

10   that a review of the transcript was not requested and that the

11   electronic recording of the proceedings was provided for

12   transcription.

13        I FURTHER CERTIFY that I am not a relative, employee, or

14   attorney, or counsel of any of the parties, nor am I a relative

15   or employee of any of the parties' attorneys or counsel

16   connected with the action, nor am I financially interested in

17   the action.

              DATED this 28th day of February 2025.
19
20                       [signature: Brittany Bridges]
21         _____
             BRITTANY BRIDGES, AAERT No. 1607
22

23

24

25
```

```
 1                CERTIFICATE OF TRANSCRIPTIONIST

 2

 3      I, BAMBI FEASTER, do hereby certify that I transcribed the

 4   electronic recording produced by BRITTANY BRIDGES, AAERT No.

 5   1607, Digital Reporter, State of Florida of the Videotaped

 6   Deposition on the record; and that the foregoing transcript is a

 7   true transcript of said electronic recording.

 8      I FURTHER CERTIFY that I am not a relative, employee,

 9   attorney, or counsel of any of the parties, nor am I a relative

10   or employee of any of the parties' attorneys or counsel

11   connected with the action, nor am I financially interested in

12   the action.

13           DATED this 28th day of February 2025.

14

15

16        _____
                      BAMBI FEASTER
17

18

19

20

21

22

23

24

25
```