**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| Nia Mills, | Case No. 22-CV-00193-BAJ-EWD |
|      Plaintiff, | |
| vs. | |
| William Allen Connelly, et al, | |
|      Defendants. | |

<u>**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**</u>

## Table of Contents

I.    INTRODUCTION ........................................................................................................ 1

II.   QUALIFIED IMMUNITY AND LAW OF THE CASE ........................................ 1

III.  FOURTH AMENDMENT CLAIMS ..................................................................... 3

    A.    Count One, Prolonged Detention: Defendant Fails to Raise a Genuine Dispute that Connelly Held Ms. Mills Well Beyond "Mission Complete" .................................... 3

        1.    Undisputed Facts Establish that Ms. Mills Is Entitled to Summary Judgment on Count One ............................................................................................................ 4

        2.    Ms. Mills Had a Clearly Established Right to Be Free From Prolonged Detention Beyond that Which Was Necessary to "Conclude the Mission" ............................ 4

        3.    Defendant Connelly Is Not Entitled to Qualified Immunity on This Claim .................. 6

    B.    Count Seven, Unlawful Impound of Rental Car: Defendant Continues to Rely on Inadmissible Evidence, No New Dispute that Defendants Seized Ms. Mills's Rental Car Unlawfully ........................................................................................................ 7

        1.    Defendant Connelly Cannot Overcome Summary Judgment Through His Late Disclosure of Inadmissible Evidence ..................................................................... 7

        2.    This Court Has Already Decided That Defendant is Not Entitled to Qualified Immunity Even if Defendant Connelly Found Marijuana in the Car, and the Inadmissible Evidence in Defendant Connelly's Declaration Does Not Change That Analysis. ................................. 9

    C.    Count Four, Seizure and Search of CashApp: No Longer Disputed Defendant Seized Cash App Card and Checked for Account Balance ............................................... 10

        1.    The Seizure of the Cards Was Unlawful ................................................................ 11

        2.    Defendant Connelly's Seizure of Ms. Mills's Cash App Card and Use of ERAD to Conduct a Balance Inquiry Thereon Violated the Fourth Amendment ................................. 13

    D.    Count Five, Unlawful Search of Electronics: No Exigent Circumstances Exception to Defendant's Coercion ............................................................................................ 14

    E.    Count Nine, Seizure of Assets Without Probable Cause: Defendant Connelly's Affidavit Omissions Were Objectively Unreasonable ............................................................. 17

IV.   STATE LAW CLAIMS ..................................................................................... 19

    A.    Count Six, Invasion of Privacy: Defendant Misconstrues Louisiana Law on Invasion of Privacy ............................................................................................................... 19

    B.    Count Eight, Conversion: Defendant's Consent to Seize Defense Fails as a Matter of Law ................................................................................................................... 21

    C.   Vicarious Liability (Counts Six and Eight): Defendant Connelly Errs in Asserting Ms. Mills's Vicarious Liability Claim is Invalid ............................................................................... 23

V.   CONCLUSION ............................................................................................................. 24

Table of Authorities

**CASES**

*Baumeister v. Plunkett*, 95-2270 (La. 5/21/96), 673 So. 2d 994, 996 ............................................ 23

*Behrens v. Pelletier*, 516 U.S. 299, 313 (1996) ................................................................................ 2

*Dual Drilling Co. v. Mills Equip. Invs., Inc.*, 721 So .2d 853, 857 (La. 1998) ............................ 23

*Franks v. Delaware*, 438 U.S. 154 (1978) ...................................................................................... 18

*Hebert v. First Guar. Bank*, 493 So. 2d 150, 164, 168 (La. App. 1 Cir. 1986) ............................ 22

*Heitschmidt v. City of Houston,* 161 F.3d 834 (5th Cir. 1998) ........................................................ 5

*Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535 (5th Cir. 2015) ................................. 21

*Malley v. Briggs*, 475 U.S. 335 (1986) .......................................................................................... 17

*Mitchell v. Forsyth,* 471 U.S. 511, 527–28 (1985) ...................................................................... 2, 3

*Plante v. Gonzalez*, 575 F.2d 1119, 1135 (5th Cir. 1978) ............................................................. 21

*Ramirez v. Killian*, 113 F.4th 415, 429 (5th Cir. 2024) ................................................................. 1

*Riley v. California*, 573 U.S. 373, 403 (2014) .............................................................................. 20

*Rodriguez v. United States*, 575 U.S. 348 (2015) ........................................................................... 5

*S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489 (5th Cir. 1996) ................................................... 8

*Schaub v. Ludwick*, No. 08-CV-12578, 2010 WL 4921594 (E.D. Mich. July 15, 2010) ............... 9

*State v. Bone*, 12-34, p. 26 (La. App. 5 Cir. 9/11/12), 107 So. 3d 49, *writ denied*, 2012-2229 (La. 4/1/13), 110 So. 3d 574 ........................................................................................................... 21

*State v. Seventy-Seven Thousand Fourteen & No/100 ($77,014.00) Dollars*, 607 So. 2d 576, 578 (La. App. 4 Cir. 1992) ........................................................................................................ 18

Synder v. Whittaker Corp, 839 F.2d 1085 (5th Cir. 1988). ................................................. 8

*Talley v. Livingston Par. Sheriff's Off.*, No. 2009 CA 2133, 2010 WL 1838564, at *4 (La. App. 1 Cir. 2010) ........................................................................................................................ 23

*Terry v. Ohio*, 392 U.S. 1 (1968) ........................................................................................ 6

*Todd v. City of Natchitoches, La.,* 238 F. Supp. 2d 793, 801 (W.D. La. 2002) .................... 19

*Tolan v. Cotton*, 572 U.S. 650 (2014) ................................................................................. 2

United States v. Ashley, 647 F. Supp. 3d 526, 532–33 (E.D. Tex. 2022) ........................... 17

*United States v. Brown*, 234 F. App'x 838 (10th Cir. 2007) ................................................ 9

*United States v. Chavez,* No. 2:18-CR-85 TS, 2018 WL 6523447  (D. Utah Dec. 12, 2018), *aff'd,* No. 19-4121, 2021 WL 4438742 (10th Cir. Sept. 28, 2021) ........................................... 9

*United States v. Cooper*, 133 F.3d 1394 (11th Cir. 1998) .................................................. 9

United States v. DE L'Isle , 825 F.3d 426, 429 (8th Cir. 2016) ........................................... 12

*United States v. Eden*, 190 F. App'x 416 (6th Cir. 2006) ................................................... 9

*United States v. Escamilla*, 852 F.3d 474, 482 (5th Cir. 2017) .......................................... 14

*United States v. Fields*, No. 15-129, 2017 WL 6450605  (E.D. Pa. Dec. 18, 2017) ............. 9

*United States v. Glenn*, 204 F. Supp. 3d 893 (M.D. La. 2016), *aff'd,* 931 F.3d 424 (5th Cir. 2019) 5

*United States v. Grant*, 349 F.3d 192 (5th Cir. 2003) ....................................................... 5

United States v. Jarman , 61 F. Supp. 3d 598, 604 (M.D. La. 2014), *aff'd in part,* 847 F.3d 259 (5th Cir. 2017) ................................................................................................................... 16

*United States v. Joseph*, 611 F. App'x 946 (11th Cir. 2015)........................................... 9

*United States v. Massi*, 761 F.3d 512 (5th Cir. 2014) ................................................... 6

*United States v. Patron*, No. 99 CR-123W, 2000 WL 33711027 (D. Utah May 1, 2000) ............. 9

*United States v. Turner*, 839 F.3d 429, 433 (5th Cir. 2016) ................................................11, 12, 13

*Vemex Trading Corp. v. Technology Ventures, Inc* , 563 F. App'x 318 (5th Cir. 2014) ................. 8

*Walker v. Stroman*, No. 20-50602, 2022 WL 2073834, at *4 (5th Cir. June 9, 2022) ................. 18

*Winfrey v. Rogers*, 901 F.3d 483 (5th Cir. 2018).......................................................... 3

**RULES**

Fed. R. Civ. P. 56(c)(2) ............................................................................... 8

Fed. R. Evid. 801(c) .................................................................................. 8

Fed. R. Evid. 805 ..................................................................................... 8

## I.     INTRODUCTION

The undisputed facts in this matter have remained the same for well over a year:  Defendant Connelly pulled Nia Mills over on Interstate 10 and for several hours held her and searched her car, her bank accounts, her phone and her laptop in a quest to seize any and all assets she had.  And he did so.  After seizing her car, her banking cards, and all of her cash, he then released her from custody with no money, no car, hundreds of miles from home.  What remains in dispute is the lawfulness of Defendant's actions.  Unsatisfied with discovery to date, Defendant has now opposed summary judgment by submitting two new declarations rife with factual assertions contradicted by discovery, including partial identification of a never-before disclosed witness; sudden, unexplained recovered "memories"; and statements not based on personal knowledge.  Viewing all admissible evidence in the light most favorable to Defendant, this Court should grant partial summary judgment to Plaintiff.

## II.    QUALIFIED IMMUNITY AND LAW OF THE CASE

In its November 21, 2024, Order on Defendants' Motion for Partial Summary Judgment, this Court addressed Defendants' arguments seeking qualified immunity on multiple claims and denied Defendants qualified immunity on each of the counts for which Defendants sought summary judgment.  ECF No. 195 ("November Order").  The second prong of this Court's qualified immunity analysis on summary judgment—whether a clearly established right existed—was a legal, not factual, determination.  *See Ramirez v. Killian*, 113 F.4th 415, 429 (5th Cir. 2024) ("The jury decides the *factual* question of whether the officer violated the plaintiff's rights—the first step of the qualified immunity analysis. It does not decide the purely *legal* question of whether the officer's actions were objectively reasonable in light of clearly established law—the second

step.") (alteration in original).  Because qualified immunity is "an entitlement not to be forced to litigate the consequences of official conduct," it follows "that a claim of immunity is conceptually distinct from the merits of the plaintiff's claim that [her] rights have been violated." *Mitchell v. Forsyth,* 471 U.S. 511, 527–28 (1985).[1]  The second prong is an "abstract issue of law" related to immunity from suit, denials of qualified immunity on a defendant's motion, i.e., denials that definitively dispose of defendant's rights by clearing the way for litigation, are immediately appealable. *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996) ("*Johnson* reaffirmed that summary judgment determinations *are* appealable when they resolve a dispute concerning an 'abstract issu[e] of law' relating to qualified immunity.") (citing *Johnson v. Jones*, 515 U.S. 304, 313–18 (1995)).  When that entitlement not to be forced to litigate the consequences of official conduct is denied, the order is collateral and therefore immediately appealable. *Id.* at 530 ("[A] district court's denial of a claim of qualified immunity, *to the extent that it turns on an issue of law,* is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment.") (emphasis added).  Defendants in this case, however, chose not to exercise their right to an interlocutory appeal of the November Order.

Although this Court's prior determination of the existence of a clearly established right was a legal determination, the contours of that right were driven by context and required some factual inquiry.  *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) ("Accordingly, [on a motion for summary judgment] courts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions.")*.*  In other words, determining what constitutes the "state of the

---

[1] Because, at the summary judgment stage, the right disposed of on a decision on qualified immunity is the entitlement not to stand trial, a denial of qualified immunity on plaintiff's motion for partial summary judgment does not dispose of defendant's entitlement not to stand trial but rather, is a merits determination subject to appeal after a final order pursuant to 28 U.S. Code § 1291 is entered in the matter.

law" requires some factual determination regarding the circumstances in which the defendant operated. *Id.* at 658. And on a motion for summary judgment, that inquiry must be made viewing the facts in the light most favorable to the nonmoving party. *Id*. at 656–57. With respect to Plaintiff's claims for the unlawful seizure and search of her Cash App card, the unlawful seizure of her rental car, and the unlawful search of her electronic devices, Defendant has not submitted competent evidence at summary judgment materially to change the undisputed facts. In other words, the context to determine whether Plaintiff had a clearly established right at the time of the conduct for each of these claims is the same when viewed in the light most favorable to Defendant on Plaintiff's motion as when viewed in the light most favorable to Plaintiff on Defendant's motion. And because Defendants did not exercise their right to an interlocutory appeal of the November Order, this Court's determination of the second prong of the qualified immunity analysis with respect to these claims is the law of the case. *See Winfrey v. Rogers*, 901 F.3d 483, 491 (5th Cir. 2018) ("The law-of-the-case doctrine generally provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" (quoting *Musacchio v. United States*, 577 U.S. 237, 244–45 (2016)).

## III. FOURTH AMENDMENT CLAIMS

### A. Count One, Prolonged Detention: Defendant Fails to Raise a Genuine Dispute that Connelly Held Ms. Mills Well Beyond "Mission Complete"

Defendant Connelly does not raise any genuine dispute of fact in his Opposition to Plaintiff's Motion for Partial Summary Judgment ("Opposition") as to the basis for Ms. Mills's Motion for Partial Summary Judgment ("Motion") on this claim: the several hours it took for him to issue a handwritten misdemeanor summons. Furthermore, Defendant does not and cannot

meaningfully dispute that the right to be free from prolonged detention is clear. Defendant is not, therefore, entitled to qualified immunity.

1. Undisputed Facts Establish that Ms. Mills Is Entitled to Summary Judgment on Count One.

Defendant Connelly does not meaningfully dispute that several hours elapsed between the initiation of the traffic stop and when Ms. Mills was allowed to leave the Narcotics Office, during which time he did not question Ms. Mills or conduct any other minimally invasive investigation to dispel any alleged suspicions he had gathered.[2] Defendant's submission of later-dated paperwork purporting to establish that Defendant Connelly did recover less than 5 grams of marijuana from the rental vehicle with limited chain of custody documentation does not create a genuine dispute as to the material issue whether Defendant was justified in continuing to detain Ms. Mills any longer than necessary to issue her a summons for misdemeanor possession of marijuana.[3] As such, the only inquiry remaining for the Court to decide is whether Defendant's continued detention of Ms. Mills beyond the time necessary to issue her a misdemeanor summons violated a clearly established right. It did.

2. Ms. Mills Had a Clearly Established Right to Be Free From Prolonged Detention Beyond that Which Was Necessary to "Conclude the Mission"

Defendant's reliance on *United States v. Glenn*, a criminal matter before this Court, to defeat Plaintiff's prolonged detention claim is unavailing. 204 F. Supp. 3d 893, 898 (M.D. La. 2016), *aff'd,* 931 F.3d 424 (5th Cir. 2019). While this Court found that the officers who stopped Glenn had reasonable suspicion to prolong the stop (to a total of 14 minutes), the search that ensued was found to be unsupported by probable cause and this Court granted the passenger's motion to

---

[2] ECF 229-1, Opposing Statement of Material Facts, p. 12 ¶70; ECF 229-2, Connelly Decl. ¶ 54 (admitting the incident "lasted no more than three hours").
[3] *See* ECF 229-3, 229-4, 229-9.

4

suppress the results of that search. *Id.*. Plaintiff's Motion, however, does not limit her prolonged detention to the five or ten minutes it would have taken Connelly to write a traffic ticket. The Motion also takes Connelly at his word that he wanted to "further verify who she was, issue the summons, all of that" but, again, he did not conduct a formal interview to dispel or confirm his suspicions, including asking for information about the car dealer in Houston.[4]

The Fifth Circuit has long recognized that continued detention after a lawful seizure is subject to Fourth Amendment scrutiny and that an initially lawful seizure or arrest does not give officers *carte blanche* to detain people for as long as they choose. In *Heitschmidt v. City of Houston*, the Fifth Circuit denied qualified immunity to officers who detained a man for four hours after executing a lawful search warrant. 161 F.3d 834, 839 (5th Cir. 1998). Here, taking Defendant Connelly at his word, the seizure should have ended once he "further verif[ied] who she was, issue[d] the summons, all of that."[5] Defendant did not "complete the mission" but instead conducted invasive searches and seizures, presumably to bring further charges against Ms. Mills. *See Rodriguez v. United States*, 575 U.S. 348, 356 (2015) (detention at traffic stop is not constitutional where "investigation into other crimes [ ] detours from that mission" of the stop above and beyond "certain negligibly burdensome precautions in order to complete his mission safely"). Any detention beyond the time necessary to complete the investigative tasks supported by reasonable suspicion constitutes unlawful detention. *See id.* at 354 (authority for seizure ends when tasks completed or reasonably should have been in traffic stop context); *United States v. Grant*, 349 F.3d 192, 196–197 (5th Cir. 2003) (holding that detention must end once officer fulfills

---

[4] ECF 221-4, Mills Decl. ¶ 13; ECF 229-15, Connelly Dep. II 133:19–25.
[5] *Id.*

mission of initial stop); *United States v. Massi*, 761 F.3d 512, 524 (5th Cir. 2014) (*de facto* arrests not supported by additional probable cause amount to unconstitutional seizures).

Defendant Connelly relies on the fact that Ms. Mills has not alleged a false arrest claim to justify his prolonged detention which he used to engage in a fishing expedition constituting unlawful seizures, searches, and invasions of privacy.[6] However, Defendant Connelly does not cite any case in support of his assertion that Ms. Mills must claim false arrest in order to prove unlawful detention following arrest, because he cannot.

3. Defendant Connelly Is Not Entitled to Qualified Immunity on This Claim.

Assuming for the purposes of summary judgment that Defendant Connelly lawfully arrested Ms. Mills for misdemeanor possession of marijuana and transported her to the station for safety, the justification for her detention ended once the summons could have been safely issued. His decision to continue holding her and conducting an unlawful search of her Cash App card, phone and computer violated clearly established Fourth Amendment precedent in the Fifth Circuit.

The Fifth Circuit has applied the limits established in *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968) to find that once an officer's mission ends—whether that be a traffic stop, execution of a warrant, or investigation at a police station—the detention must end. *Heitschmidt*, 161 F.3d at 839 (finding after lawful execution of search warrant, there was no justification for prolonging detention once the premises were secure and police were able to conduct their search, i.e., once the mission was complete). Defendant Connelly clearly violated that right when he held Ms. Mills for hours to conduct repeated unlawful searches.

---

[6] ECF 229, p. 14.

B.  Count Seven, Unlawful Impound of Rental Car: Defendant Continues to Rely on Inadmissible Evidence, No New Dispute that Defendants Seized Ms. Mills's Rental Car Unlawfully

Ms. Mills is entitled to summary judgment against Defendant Connelly for unlawfully seizing her rental car in violation of the Fourth Amendment.  Discovery yielded no new facts relative to this claim since Defendants' unsuccessful motion for summary judgment.  Instead, Defendant Connelly has attempted to overcome summary judgment inappropriately by submitting a declaration referring to a new witness not previously disclosed in this matter that has been pending for over three years.  For the reasons stated below and detailed in Plaintiff's Objections to Defendant's Statement of Unopposed Facts (attached to this Reply as Exhibit 1), those portions of Connelly's declaration are inadmissible and should be excluded both at summary judgment and at trial.  Moreover, this Court has already found that Defendant Connelly was not entitled to qualified immunity on this claim and on the same set of undisputed facts in Defendant's motion for summary judgment, irrespective of his alleged discovery of marijuana in Ms. Mills's car.

1.  Defendant Connelly Cannot Overcome Summary Judgment Through His Late Disclosure of Inadmissible Evidence.

In an attempt to justify his warrantless seizure of Ms. Mills's rental car, Defendant Connelly has submitted a new declaration detailing a double-hearsay conversation he now claims he had with a male colleague he refuses to identify.[7]  Defendant Connelly claims the colleague told him he had called Hertz and that someone Hertz told the colleague that Hertz wanted the car seized.[8]  However, prior to this new declaration signed on August 8, 2025—the day his response

---

[7] ECF 229-2.
[8] *Id.* ¶¶ 47–50 ("Prior to the vehicle being impounded, a colleague from the West Baton Rouge Sheriff's Office told me he reached out to Hertz Rental Car Company and informed them of the fact marijuana was found in Plaintiff's rental car. This colleague told me that the Hertz Rental Car Company representative he spoke to stated the car needed to be impounded due to the fact that it was involved in criminal activity.").

to Ms. Mills's summary judgment motion was due—Defendant Connelly could not remember any details about who talked to Hertz, or even if anyone ever spoke to Hertz, nor could any other Defendant provide information about how the car came to be impounded and seized.[9]  As more fully briefed in Plaintiff's Objections to Defendant's Statement of Uncontested Facts, this new information is not admissible now, or at trial, under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and ample Fifth Circuit precedent because: (1) it was only disclosed months after the close of fact discovery, despite two depositions of Defendant Connelly, multiple declarations filed by Defendants, and verified written discovery on the subject; (2) it contains inadmissible hearsay and double hearsay; and (3) it constitutes an unexplained contradictory recollection inadmissible at summary judgment.[10]  *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 801(c) (hearsay), 805 (hearsay within hearsay); *S.W.S. Erectors, Inc. v. Infax, Inc*., 72 F.3d 489, 495 (5th Cir. 1996) ("It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony.").

---

[9] *See* ECF 229-12, Connelly Dep. I 106:6–9 ("I can't remember who contacted [Hertz]."); ECF-15, Connelly Dep. II 171:13–172:21 ("Q: did you speak to anybody from the [Hertz]? A. I don't remember which one of us it was. It could have been me. Like I'm -- I just don't recall. Q. Would there be any notes or records of what was said or when the call was made? A. I don't think so. I'm not sure.").

[10] In a footnote, Defendant argues that his late-stage declaration insisting that he heard from an unnamed man that Hertz wanted the car impounded is not hearsay because he is "offering it simply to show that the statement was made, which is permissible under the Federal Rules of Evidence." ECF 229 at 20 n.79.  Not only is that statement belied by his prior statement on page 20 of his Opposition, ECF 229 p. 20 ("[W]hat is also not in dispute is … that [Hertz] advised they wanted Plaintiff's rental car impounded because it had been involved in criminal activity"), Defendant does in fact attempt to submit double hearsay: he is offering Hearsay One, that someone told him he called Hertz, for the truth that that person *did* call Hertz.  Furthermore, the cases cited by Defendants do not address hearsay within hearsay or even a reliance argument.  *Vemex Trading Corp. v. Technology Ventures, Inc.*, is an unpublished breach of contract claim where the issue of notice of breach was dispositive and the lower court admitted hearsay not for the truth of the claim of defect but simply for the fact that a communication between the parties was had.  563 F. App'x 318, 324 (5th Cir. 2014).  In *Synder v. Whittaker Corp.*, the Fifth Circuit held that a memo detailing a potential issue with a product had proper non-hearsay use as evidence that a company had been given the memo.  839 F.2d 1085, 1090 (5th Cir. 1988).

2.  This Court Has Already Decided That Defendant is Not Entitled to Qualified Immunity Even if Defendant Connelly Found Marijuana in the Car, and the Inadmissible Evidence in Defendant Connelly's Declaration Does Not Change That Analysis.

In addition to relying on inadmissible evidence, Defendant Connelly devotes much of his Opposition to citing out-of-circuit and unpublished case law, presumably in an effort to argue that Ms. Mills's right to be free from the unlawful seizure of her vehicle was not clearly established at the time Defendant cites a slew of these decisions, each of which involve a driver of a rental car in some manner but not one of which pertains to the validity of impounding a lawfully possessed rental vehicle when no community caretaking exception applies or lawful policy is in place.[11] Regardless, this Court has already found "the law was clearly established that the seizure was not allowed" and held that Defendant Connelly is not entitled to qualified immunity even if marijuana was found in the car.[12]

As the Court rightly found, "[e]ven if there was marijuana in the car, the seizure has no basis in law."[13]  After analyzing relevant law in the Fifth Circuit, the Court concluded that "[e]ven

---

[11] ECF 229, p. 21 (*United States v. Joseph*, 611 F. App'x 946, 948 (11th Cir. 2015) (involving the search of a vehicle that had been impounded pursuant to a written and published policy); *United States v. Chavez,* No. 2:18-CR-85 TS, 2018 WL 6523447, at *2 (D. Utah Dec. 12, 2018), *aff'd,* No. 19-4121, 2021 WL 4438742 (10th Cir. Sept. 28, 2021) (evidence would not be suppressed in case involving a high-speed chase in an overdue rental car and search yielded ten pounds of methamphetamine located in the vehicle's trunk); *United States v. Brown*, 234 F. App'x 838, 842 (10th Cir. 2007) (no allegations regarding impounding of vehicle, policy regarding impound, or any vehicle seizure); *Schaub v. Ludwick*, No. 08-CV-12578, 2010 WL 4921594, at *1 (E.D. Mich. July 15, 2010) (habeas petition, policy to impound vehicle not at issue); *United States v. Fields*, No. 15-129, 2017 WL 6450605 at *2 (E.D. Pa. Dec. 18, 2017) (lack of policy seizing rental car not challenged as car seized pursuant to Pennsylvania state statute); *United States v. Cooper*, 133 F.3d 1394 (11th Cir. 1998) (on suppression motion finding that Plaintiff had reasonable expectation of privacy in overdue rental vehicle; no allegations of policy, or lack thereof); *United States v. Eden*, 190 F. App'x 416 (6th Cir. 2006) (affirming district court grant of suppression motion where officers searched trunk of rental vehicle driven by unauthorized driver, impound policy not at issue); *United States v. Patron*, No. 99 CR-123W, 2000 WL 33711027 (D. Utah May 1, 2000) (suppression motion denied involving rental vehicle ultimately impounded after determining driver was not licensed nor was authorized driver of vehicle, no challenge to impound policy or caretaking exception discussed)).  What these cases do is in fact belie Defendant's claim that he submits the hearsay for its reliance value, not is truth, as the factual background in each of these otherwise inapposite cases involve law enforcement officers in other states calling rental car companies.

[12] ECF 195, p. 29.

[13] *Id.* p. 27.

9

if marijuana was found in the car, qualified immunity still fails."[14]  The Court also found Defendant

Connelly's explanations for seizing the car did not "suffice" and "nor is there competent summary

judgment evidence that the rental car company was ever contacted."[15]  Nothing has changed since

and, therefore, this Court's ruling is the law of the case.  *See* Section II, *supra.*  Defendant Connelly

is not entitled to qualified immunity on this claim.

C.  Count Four, Seizure and Search of Cash App: No Longer Disputed Defendant Seized Cash App Card and Checked for Account Balance

Though Defendant Connelly alleges several disputes of fact as to his seizure and search of

Ms. Mills's Cash App card, none are material to the question of whether his actions were lawful.

They were not.

Defendant Connelly admits he seized banking cards from Ms. Mills's purse while she was

sitting outside the car.[16]  He further "admits he used the ERAD card reader to read the magnetic

strips attached to the back of Ms. Mills's plastic cards, which were found in her purse."[17]  Finally,

Defendant Connelly affirmatively asserts that he "ran two account balance inquiries on" the Cash

App Card.[18]  The first balance inquiry was in the amount of $5,000.00 and the second in the amount

of $1,000.00.[19]  That is, at minimum, considering the facts in the light most favorable to Defendant,

Defendant seized Ms. Mills's cards from her purse in conjunction with searching her vehicle, and

then later used ERAD to (1) scan some of those cards to determine whether the magnetic strip

matched the information legible on the card and (2) conduct balance inquiries on Ms. Mills's Cash

App card. Defendant Connelly took each of these actions without a warrant.

---

[14] *Id.* p. 29.
[15] *Id.*
[16] ECF No. 229-1, Defendants' Responses and Objections to Plaintiff's Statement of Uncontested Facts, p.6 ¶ 28.
[17] *Id.*, p. 7 ¶ 36.
[18] *Id.*, Defendants' Statement of Uncontested Material Facts, p. 18 ¶ 42; ECF 229-2, Connelly Decl. ¶ 29.
[19] *Id.*

1. The Seizure of the Cards Was Unlawful.

Defendant Connelly does not substantively dispute Ms. Mills's assertion that seizure of the Cash App card was not done incident to arrest. Defendant instead argues that seizure of Ms. Mills's cards was proper because he "believe[ed]" that the Cash App card was revealed through a lawful search of Plaintiff's purse (a search Defendant Connelly has stated was for marijuana) and was then seized because it might "potentially lead to evidence of the crime of drug trafficking."[20] Defendants offer no further justification for the seizure.

Even if Ms. Mills were to concede that the warrantless searches of her car and purse were proper—which she does not—the seizure of her Cash App card remains improper. An item must produce in an officer "probable cause to believe that the item is either evidence of a crime or contraband." *United States v. Turner*, 839 F.3d 429, 433 (5th Cir. 2016) (internal quotations omitted). Courts "consider the totality of the circumstances—including the officers' training and experience as well as their knowledge of the situation at hand." *Id.* (internal quotations omitted). Defendant Connelly's belief that the card could "lead to evidence" of a crime does not meet this standard.

Defendant Connelly seized a total of seven cards from Ms. Mills, none of which were gift cards, but rather validly issued credit cards in her name, a Cash App card, and a wages card.[21] The number and types of cards were not such that these facts alone would give rise to reasonable belief of criminal activity. *Turner*, in contrast, involved the seizure of approximately 100 gift cards from a bag that had been hidden under a seat. 839 F.3d at 433. The police officers in *Turner* additionally testified that "large numbers of gift cards"—*i.e.*, the specific items seized—were known to be

---

[20] ECF 229 p. 24.
[21] *See* Ex. 18, Redacted Photos of Cards, to Plaintiff's Motion for Summary Judgment, ECF 226-20.

"associated with drug dealing, fraud, and theft." *Id.* In *United States v. DE L'Isle*, another case involving warrantless card seizure that Defendant cites liberally, police officers found and seized "a large stack of credit, debit, and gift cards." 825 F.3d 426, 429 (8th Cir. 2016). The *DE L'Isle* court does not specify the exact number of cards involved, but the opinion suggests there were at least 59 cards seized. *Id.* The number of cards Ms. Mills had in her purse is far below that which precedent shows would lead to suspicion of drug trafficking.

Indeed, nothing Defendants had seen or heard during their interaction with Ms. Mills could have produced probable cause to seize the cards, which Defendants never returned. Defendant Connelly claims he found a "bag" of marijuana in the car.[22] Even Defendant Connelly's implausible claim that Ms. Mills had volunteered that she was on her way to Texas to "buy weed, I mean a car" does not, if taken as true, provide probable cause, given that the record contains no evidence that the search of the car resulted in any indication of drug trafficking, or anything other than personal belongings.[23]

Ms. Mills's right under the Fourth Amendment to be free from the warrantless seizure of her possessions, absent a valid exception, is clearly established. Nothing Defendant has alleged alters the undisputed facts showing that no such exception applies here. For the reasons discussed in Section II.A., *supra*, Defendants are not entitled to qualified immunity as to the seizure of Ms. Mills's financial instruments, including her Cash App card.

---

[22] ECF 229-12, Connelly Dep. I 78:1–9.
[23] *Id.* 21:3–6, 77:4–85:10 (describing the search of the car that resulted in no findings other than the alleged bag of marijuana).

2.  Defendant Connelly's Seizure of Ms. Mills's Cash App Card and Use of ERAD to Conduct a Balance Inquiry Thereon Violated the Fourth Amendment.

Again, there is no meaningful dispute as to the material facts that govern Defendant Connelly's use of ERAD to conduct a balance inquiry on Ms. Mills's Cash App account. There is no dispute that ERAD permits officers to determine if plastic cards are fraudulent or contain stolen credit card information.[24] Defendant Connelly further admits that he "ran two balance inquiries on" Plaintiff's Cash App card.[25] The balance inquiry constituted an impermissible warrantless search. Neither party disputes that Cash App returned to Ms. Mills two notifications that law enforcement had attempted withdrawals on her account.[26]

Assuming proper seizure of a gift card, *Turner* permits the warrantless reading of the magnetic strip on that card because there is no expectation of privacy as to the limited information contained on the strip, i.e., the name and account number of the account holder. *Turner*, 839 F.3d at 435. Defendants expound at great length on cases from other circuits that reach similar conclusions as to other kinds of plastic cards, including debit and credit cards.[27] Critically, these cases restrict their holdings to the relatively limited information that can be obtained through running a magnetic strip. The *Turner* court explicitly acknowledged its holding was "limit[ed] . . . to the gift cards of today, which are not intended to be used for—and rarely are used for—storing information entered by the user." 839 F.3d at 437.

Defendant's cited cases are inapposite where, as here, Defendant Connelly did not restrict his search to a scan of the magnetic strip on Ms. Mills's Cash App card. There is no dispute that Defendant Connelly conducted multiple balance inquiries on Ms. Mills's Cash App card without

---

[24] ECF 229-2, Connelly Decl. ¶ 28.
[25] *Id.* ¶ 29.
[26] ECF 229-1, Defendants' Statement of Uncontested Material Facts, p. 18 ¶ 42
[27] ECF 229, pp. 27–28.

a warrant, that the balance inquiries were flagged as coming from "LEA," or that, in fact, the inquiries revealed personal information regarding Ms. Mills's account.[28] Ms. Mills has a privacy interest in the amount of money she holds in a given account. No exception to the warrant requirement permitted Defendant Connelly to invade this privacy interest, and he could not have reasonably concluded otherwise. Defendant Connelly is not entitled to qualified immunity as to his warrantless seizure and search of Ms. Mills's Cash App card. To the contrary, based on the undisputed facts, Ms. Mills is entitled to summary judgment as to this claim.

   D.  Count Five, Unlawful Search of Electronics: No Exigent Circumstances Exception to Defendant's Coercion.

Nothing in Defendant Connelly's Opposition raises a genuine issue of material fact with respect to the invalidity of Ms. Mills's consent for the search of her electronic devices. Further, this Court already ruled that Defendant is not entitled to qualified immunity on this claim given the undisputed evidence of involuntariness. The totality of the factors proves what this Court has already ruled: Defendant coerced Ms. Mills.

Defendant Connelly claims that his actions were not coercive, but as detailed in Ms. Mills's Motion, the totality of factors demonstrate that they were.[29] *See United States v. Escamilla*, 852 F.3d 474, 482 (5th Cir. 2017) (detailing six factors used to analyze whether consent was voluntary). Further, Defendant's claim is in direct contradiction to the Court's decision denying Defendant's own Motion for Summary Judgment.[30] While in ruling on the Defendants' Motion for Summary Judgment, the facts were viewed in favor of Ms. Mills, in reviewing the factors now on Plaintiff's Motion to determine if consent was valid, the same conclusion is reached.

---

[28] ECF 229-7; ECF 229-1, Responses and Objections to Plaintiff's Statement of Uncontested Facts, p. 7 ¶¶ 36–38; ECF-2, Connelly Decl. ¶ 29.
[29] See ECF 226-1, p. 19.
[30] ECF 195, p. 19.

Defendant Connelly states that Ms. Mills was free to leave with her computer and phone if she consented to a search of those items, or she could leave without those items.[31]  This Court ruled that "coercive tactics appear to be present that mitigate against consent."[32]  Defendant does not dispute that Ms. Mills was handcuffed for several hours prior to the search of her phone and laptop.[33]  He also does not dispute that he had taken all of her banking cards, seized her car, and was now threatening to keep her phone such that she had no way to call or pay for transportation back to Jackson, Mississippi.[34]  Defendant has also repeatedly refused to identify who else was at the station, who could have "ran out the door" to yell at Ms. Mills while she was handcuffed by the secretary.[35]  His lack of knowledge does not create a genuine dispute of Ms. Mills's account of what other deputies said to her, our of his sight, while she was handcuffed.  While Defendant Connelly minimizes the fact that Ms. Mills was far from home, the fact remains that she had no plausible way of reaching home without her phone.[36]  All of these facts, among the others that Ms. Mills details in her Motion, prove that this Court's earlier conclusion that Defendant did not obtain consent to search Ms. Mills's phone and laptop still holds.[37]

In an apparent attempt to circumvent the Court's prior ruling denying qualified immunity because he coerced Ms. Mills's consent, Defendant Connelly now asserts that he had probable cause to search her devices and that the exigent circumstances exception to the warrant requirement would have allowed him to seize them pending a search warrant.[38]  The fact that Defendant sought

---

[31] ECF 229-2, Connelly Decl. ¶ 41.
[32] ECF 195, p. 19.
[33] ECF 229-1, p. 12 ¶ 70.
[34] *Id.*, pp. 6, 9, 10 ¶¶ 28, 48, 51, 56–58,
[35] ECF 229-12, Connelly Dep. I 91:9–10
[36] ECF 226-1, p. 20.
[37] *Id*.
[38] ECF 229, pp. 32–33.

Ms. Mills's consent to search the devices demonstrates that the exigent circumstances exception does not apply here in addition to establishing Connelly's awareness that he had no independent legal basis to conduct the searches otherwise. This Court found that "absent any other incriminating information, Connelly did not have probable cause to search for evidence of drug trafficking because the quantity [of marijuana] was so small."[39] Defendant erroneously claims in his Opposition that this Court reached this conclusion because it did not "expressly" consider that Defendant alleges Ms. Mills stated she was going to Texas to "buy weed, I mean a car."[40] However, this allegation was before the Court multiple times when it denied Defendants' motion for summary judgment.[41] This Court considered a number of additional undisputed facts—including the fact Ms. Mills's passenger fled and was found with no contraband—and still found that Defendant Connelly's actions were coercive.[42]

The exigency exception to the warrant requirement now relied on by Defendant misses the point. *United States v. Jarman* involved a defendant whose computer was seized after a repair technician found child pornography and held it for the FBI to obtain a warrant. 61 F. Supp. 3d 598, 604 (M.D. La. 2014), *aff'd in part,* 847 F.3d 259 (5th Cir. 2017). The Fifth Circuit held that warrantless seizure that was nevertheless supported by probable cause fell within the exigency exception as the owner of the hard-drive was a lawyer capable of destroying evidence. *Id.* at 604. In *United States v. Ashley*, the district court denied defendant's suppression motion on the seizure of his cellular phone while awaiting a search warrant (which did issue) on exigency grounds again due to the existence of probable cause and evidence that the defendant had already destroyed text

---

[39] ECF No. 195, p. 19.
[40] ECF No. 229, p. 31.
[41] ECF No. 168-1, p. 2; ECF 171-2, p. 29, ECF 78-1, p. 2.
[42] ECF No. 195, p. 20.

messages on the phone prior to the police encounter.  647 F. Supp. 3d 526, 532–33 (E.D. Tex.

2022).  Courts must examine:

> objective factors, rather than subjective intent to determine exigency. Thus, a valid exigency exists when an officer believes that evidence is being destroyed—although an officer may not rely on the need to prevent destruction of evidence when that exigency was created or manufactured by the conduct of the police.

*Id.* at 533 (internal quotations omitted).  No probable cause existed and, even if it did, there are no

objective factors here to suggest any exigency other than what Defendant himself may have

conjured by unlawfully threatening to keep Ms. Mills's phone pending an application for a warrant.

### E.  Count Nine, Seizure of Assets Without Probable Cause: Defendant Connelly's Affidavit Omissions Were Objectively Unreasonable.

Ms. Mills is entitled to summary judgment against Defendant for unconstitutionally seizing

$3,567 in cash.  Defendant does not argue that he is entitled to qualified immunity on this claim

though, nevertheless, the law is clear that Defendant Connelly violated Ms. Mills's Fourth

Amendment rights by knowingly submitting and then executing an objectively unreasonable

affidavit for seizure (in asset forfeiture) that omitted material facts negating probable cause.

Defendant attempts to constrain Plaintiff's asset forfeiture argument to one based solely in

*Franks* rather than also based in *Malley v. Briggs*, 475 U.S. 335 (1986).  The relevant question

here—just as in *Malley*—is "whether a reasonably well-trained officer in petitioner's position

would have known that his affidavit failed to establish probable cause and that he should not have

applied for the warrant."  *Id.* at 345.  There is no genuine dispute that Defendant Connelly both

filled out the affidavit for warrant to seize Plaintiff's cash and seized *for forfeiture* the cash itself.

17

And there is no genuine dispute that Connelly knew that he found "no trafficking evidence" after his extensive, unlawful searches.[43]

Even under a *Franks* analysis, the undisputed facts establish that Defendant's acts were objectively unreasonable and violated Plaintiff's Fourth Amendment rights. *Franks v. Delaware*, 438 U.S. 154 (1978). A *Franks* analysis requires courts to "insert the omitted facts into the affidavit and ask whether the reconstructed affidavit would still support a finding of probable cause." *Walker v. Stroman*, No. 20-50602, 2022 WL 2073834, at *4 (5th Cir. June 9, 2022) (internal quotations omitted). Defendant fails to contend with the number of omissions Connelly made. He cites only three omissions: (1) the weight of the marijuana seized, (2) the fact Mr. Catchings was unarmed, and (3) the fact that Mr. Catchings was not arrested with contraband.[44] Defendant ignores the omissions that largely form the basis for this motion: (4) Connelly searched Ms. Mills's purse and found nothing, (5) he searched her banking instruments and found nothing, (6) he searched her laptop and found nothing, and (7) he searched her mobile phone and found nothing, (8) he later conducted an inventory search of her car and found nothing,[45] (9) he ultimately found "no trafficking evidence" nor (10) any material nexus between the seized funds and any criminal activity.[46] Taken together, these seven *additional* factual omissions were material, rendering any affidavit which knowingly fails to contain these facts not just devoid of probable cause but objectively unreasonable. *See State v. Seventy-Seven Thousand Fourteen & No/100 ($77,014.00) Dollars*, 607 So. 2d 576, 578 (La. App. 4 Cir. 1992) (rejecting forfeiture of cash

---

[43] ECF 229-12, Connelly Dep. I 104:7.
[44] ECF 229, pp. 35–36.
[45] ECF 229-2, Connelly Decl. ¶ 54.
[46] ECF 226-1, p. 26.

18

where "there was no evidence" connecting either the property owner or the forfeited money to "the drug trade").[47]

## IV.    STATE LAW CLAIMS

### A.  Count Six, Invasion of Privacy: Defendant Misconstrues Louisiana Law on Invasion of Privacy.

Defendant Connelly wrongly claims there was no intrusion into Ms. Mills's private electronic content because his search of her phone and laptop was "reasonable." Not so. Rather, Defendant's search lacked probable cause and no circumstances rendered it reasonable. It was, as a result, a serious and damaging intrusion upon Ms. Mills's privacy.

Defendant is correct that, under Louisiana law, an invasion of privacy claim requires an "unreasonable intrusion into [one's] solitude or private affairs." ECF 229, p. 36 (quoting *Todd v. City of Natchitoches, La.,* 238 F. Supp. 2d 793, 801 (W.D. La. 2002) (internal quotations omitted)). But what Defendant gets wrong is what constitutes "unreasonable." The court in *Todd* balanced a wife's right to enter her jointly owned home, accompanied by law enforcement, and pursuant to a validly issued court order, to gather her belongings, versus her soon-to-be ex-husband's right to solitude. 238 F. Supp. at 803. Nothing could be farther from the undisputed facts in this case: Defendant Connelly did not possess a warrant or any order of court to enter or search Ms. Mills's electronics, and he certainly had no entitlement or ownership interest in the electronics. He had, at best, a poorly articulated hunch. Under Louisiana law, such hunch does not create a reasonable intrusion upon Ms. Mills's privacy.

---

[47] Defendant's reliance on seizures incident to an arrest misses the point. Plaintiff has challenged March 30, 2021, affidavit for seizure of her cash for purposes of asset forfeiture, not the March 26, 2021, seizure incident to Mr. Catchings's arrest. *See* ECF 226-19.

As for Defendant Connelly's argument that probable cause existed to search Ms. Mills's electronics for evidence of drug trafficking, thereby making the search "reasonable," Defendant again falls flat. First, warrantless searches of electronics in non-exigent circumstances are unlawful, regardless of any alleged probable cause. *See Riley v. California*, 573 U.S. 373, 403 (2014). Second, Defendant points to no case whereby a warrantless search is, in any event, *per se* reasonable if supported by probable cause under the Louisiana tort of invasion of privacy. Defendant further muddies the analysis by pointing to inapposite case law that turns on the inevitable discovery rule, which is not the standard by which an invasion of privacy claim is evaluated under Louisiana tort law.[48] Indeed, Defendant cannot point to any fact which would have independently supported his "discovery" (of Ms. Mills's private data) absent a warrant nor can he point to sufficient facts to establish his entitlement to warrant. At the traffic stop, Defendant Connelly noted a belief that Ms. Mills's purse may have had "additional criminal evidence"—it did not.[49] Defendant Connelly later used the ERAD machine to identify anything supporting suspicious or criminal activity.[50] He found nothing. *Still*, Defendant continued his unlawful search of Ms. Mills's phone and computer without probable cause, incorrectly analogizing a search to corroborate innocence with a search on proper legal grounds.[51] There can be no doubt that Defendant's search of Ms. Mills's laptop and phone was not supported by probable cause.

---

[48] Defendant's reliance on *State v. Magee*, 2017-1217 (La. App. 1 Cir. 2/27/18), 243 So.3d 151, 160, is unavailing. Not only does *Magee* not contain a state tort claim for invasion of privacy, but the Fourth Amendment claim for unlawful search pertains to a piece of unopened mail in an open, common mailbox, an item which the Court found "the defendant had no reasonable expectation of privacy" therein. *Id.* There is no doubt—and Defendant does not contend otherwise—that Ms. Mills had a reasonable expectation of privacy in the contents of her cellular phone and laptop.
[49] ECF 229-2, Connelly Decl. ¶ 26.
[50] ECF 229-15, Connelly II Dep. 151:12–17.
[51] *See* ECF 229-2, Connelly Decl. ¶ 45; *see also Deville v. Marcantel*, 567 F.3d 156, 165 (5th Cir. 2009) (noting that "evidence that the arrestee was innocent of the crime is not necessarily dispositive of whether the officer had probable cause to conduct the arrest").

20

Defendant does not dispute that his unauthorized search interfered with Ms. Mills's privacy interest by exposing Ms. Mills's intimate photos and private text messages. *See State v. Bone*, 12-34, p. 26 (La. App. 5 Cir. 9/11/12), 107 So. 3d 49, *writ denied*, 2012-2229 (La. 4/1/13), 110 So. 3d 574 (finding that the exclusive user of a cell phone who used the phone for personal purposes had a reasonable expectation of privacy in the text messages sent and received on the cell phone). All that he is able to allege is that he has no recollection of what he saw.[52] Failure to recall or a lack of any memory does not create a disputed fact nor does it mean an invasion of privacy did not happen. *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 541 (5th Cir. 2015) ("Lack of memory by itself is insufficient to create a genuine dispute of fact.") (citing *Dickey v. Baptist Mem'l Hosp.–N. Miss.*, 146 F.3d 262, 266 n.1 (5th Cir. 1998)). Defendant Connelly searched extensively through text messages and messaging applications on Ms. Mills's phone and through emails on Ms. Mills' laptop.[53] These intrusions, along with the facts that Ms. Mills had nude photos on the personal phone through which Defendant Connelly rifled and that WBRSO Officers mocked content found on Ms. Mills's laptop, collectively constituted a breach of Ms. Mills's legitimate expectations of privacy.[54]

### B. Count Eight, Conversion: Defendant's Consent to Seize Defense Fails as a Matter of Law.

Defendant's reliance on the consent to seize defense regarding the seizure of Ms. Mills's rental car mischaracterizes both the law and the facts. Plaintiff agrees with Defendant that consent by an owner can serve as a defense to conversion, as found in the *Hebert* case cited by Defendant.

---

[52] ECF 229-2, Connelly Decl. ¶ 63.
[53] ECF 229-12, Connelly I Dep. 100:25, 101:1–2, 101:14–21; 103:1–22.
[54] ECF 226-7, Mills Dep. 66:6–14, 77:18–25, 78:1–11; *see Plante v. Gonzalez*, 575 F.2d 1119, 1135 (5th Cir. 1978) ("When a legitimate expectation of privacy exists, violation of privacy is harmful without any concrete consequential damages.").

*Hebert v. First Guar. Bank*, 493 So. 2d 150, 164, 168 (La. App. 1 Cir. 1986) (finding plaintiff voluntarily consented to defendant taking her financed car). But what Defendant has failed to account for is the *Hebert* court considered a financed vehicle where title had not been issued to the plaintiff nevertheless to belong to the plaintiff, Mrs. Hebert, such that her consent to repossession invalidated her claim for conversion. *Id.* at 164. This Court already concluded that "Plaintiff was the legally authorized lessor in possession of the car," not the Hertz Rental Company, at the time of the conversion.[55] Neither party disputes that immediately after the search was concluded, Ms. Mills asked for her rental vehicle back so that she could return safely to her home in Mississippi, nor that Defendant Connelly never returned the vehicle to Ms. Mills.[56]

Further, even if Hertz Rental Company was the lawful possessor at the time of the conversion, which they were not, Defendants present no competent evidence that Hertz consented to Defendant Connelly's seizure of Ms. Mills's rental vehicle.[57] To the contrary, Roadrunner Towing West impounded Ms. Mills's vehicle only at the request of the West Baton Rouge Parish Sheriff's Office.[58] Defendant's vague and unsubstantiated assertion that "rental car companies frequently demand impoundment of their vehicles when the vehicle is involved in a criminal act" lacks any factual foundation and ignores the undisputed evidence that Ms. Mills was never found in possession of marijuana or convicted of any crime.[59] Moreover, even if such a general practice existed, it would not constitute consent to this specific, unlawful seizure without a warrant.

The undisputed facts demonstrate that Defendant Connelly converted Ms. Mills's rental car through multiple acts of dominion: he unlawfully seized the vehicle without a warrant, ordered

---

[55] ECF 195, p. 30.
[56] ECF 229-1, p. 11 ¶¶ 65–66; ECF 226-7, Mills Dep. 74:1–10.
[57] ECF 229, p. 38.
[58] ECF 226-18, Lee Decl. ¶ 4.
[59] ECF 229, p. 38.

it towed to the sheriff's office parking lot, exercised control over it, and denied Ms. Mills possession when she requested its return after the search concluded.[60]  Louisiana conversion law protects possessory rights, and Ms. Mills, as the lawful lessee in possession, had the right to immediate possession of the vehicle, the denial of which caused her harm.  *See Dual Drilling Co. v. Mills Equip. Invs., Inc.*, 721 So .2d 853, 857 (La. 1998); *Talley v. Livingston Par. Sheriff's Off.*, No. 2009 CA 2133, 2010 WL 1838564, at *4 (La. App. 1 Cir. 2010).  Defendant's consent defense fails as a matter of law because they cannot point to any evidence of actual consent from the true party in interest—Ms. Mills—to their specific acts of dominion over Ms. Mills's rental vehicle.

C. Vicarious Liability (Counts Six and Eight): Defendant Connelly Errs in Asserting Ms. Mills's Vicarious Liability Claim is Invalid.

Defendant Cazes further incorrectly argues that he cannot be found liable for Defendant Connelly's conversion of Ms. Mills's rental car and invasion of Ms. Mills's privacy.  The parties agree that the law is clear: employers can be liable for actions by employees that occur within the course and scope of their employment.  *Baumeister v. Plunkett*, 95-2270 (La. 5/21/96), 673 So. 2d 994, 996.  The only disagreement is whether the actions of the employee, *i.e.¸* Defendant Connelly, were tortious.  As re-examined above, Defendant Connelly acted within the course and scope of his employment as a Deputy of the WBRSO when he illegally seized Ms. Mills's rental car, leading to its subsequent impoundment and Ms. Mills's inability to re-possess it.  Defendant Connelly also acted within his employment when he intruded into Ms. Mills's private electronic content during an unreasonable search.  Defendant Cazes, as the West Baton Rouge Sheriff, unambiguously maintained an employer-employee relationship at the times of Defendant Connelly's actions. Thus, Defendant Cazes is vicariously liable.

---

[60] ECF 229-1, pp. 11, 12 ¶¶ 65–66, 72–73.

23

## V.    CONCLUSION

Because, based on the admissible evidence, there exist no genuine issues of fact with respect to each of Plaintiff's counts on summary judgment, and because Plaintiff has established a clearly established right for Counts One, Four, Five, Seven and Nine, Defendant Connelly is not entitled to qualified immunity.  Plaintiff's Motion for Partial Summary Judgment should be granted.


Respectfully submitted,

*s/ Marjorie Menza*
Marjorie Menza (*pro hac vice*)
Sara Haji (*pro hac vice*)
Joshua Z. Behrens (*pro hac vice*)
**Social Justice Legal Foundation**
523 West 6th St., Suite 450
Los Angeles, CA 90014
(213) 524-5241
mmenza@socialjusticelaw.org
shaji@socialjusticelaw.org
jbehrens@socialjusticelaw.org


Courtney A. O'Donnell (*pro hac vice*)
**Southern Poverty Law Center**
150 E Ponce de Leon Ave, Suite 340
Decatur, GA 30030
(404) 521-6700
courtney.odonnell@splcenter.org

Andrea Alajbegovic (*pro hac vice*)
**Southern Poverty Law Center**
111 East Capitol Street, Suite 280
Jackson, MS 39201
(601) 265-8309
andrea.alajbegovic@splcenter.org

*and*

24

 /s/ Nora Ahmed
Nora Ahmed (*pro hac vice*)
Charles Andrew Perry (Bar No. 40906)
Malcolm Lloyd (Bar No. 41573)
**ACLU Foundation of Louisiana**
1340 Poydras St., Suite 2160
New Orleans, LA 70112
(504) 522-0628
nahmed@laaclu.org
aperry@laaclu.org
mlloyd@laaclu.org

*and*

 /s/ Brittani A. Jackson
Brittani A. Jackson (*pro hac vice*)
**Hueston Hennigan LLP**
523 West 6th St., Suite 400
Los Angeles, CA 90014
(213) 788-4065
bjackson@hueston.com

*Counsel for Plaintiff Nia Mills*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 29th day of August, 2025, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the court's electronic filing system. I also certify that a copy of the foregoing will be sent to all non-CM/ECF participant(s) by United States Mail, properly addressed and postage pre-paid.

*/s/  Marjorie J. Menza*
Marjorie J. Menza

26