## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

NIA MILLS,

              Plaintiff,

              v.

WILLIAM ALLEN CONNELLY, ET AL.,

              Defendants.

Case No. 22-193-BAJ-EWD

Judge Brian A. Jackson

Magistrate Judge Erin Wilder-Doomes

## PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANTS' STATEMENT OF UNCONTESTED MATERIAL FACTS

1. William Connelly is over the age of majority. See Exhibit A, Declaration of William Connelly, ¶ 1.

**Plaintiff's Response: Qualified.** This statement is denied as an immaterial fact which does not bear on the issues presented on summary judgment.

2. William Connelly was a Deputy with the West Baton Rouge Sheriff's Office ("WBRSO") and was so on March 26, 2021. See Exhibit A, Declaration of William Connelly, ¶ 2.

**Plaintiff's Response: Admitted**.

3. On March 26, 2021, William Connelly conducted a traffic stop of a vehicle being driven by Nia Mills ("Plaintiff") on Interstate 10 West, and which was occupied by her partner, Cory Catchings ("Catchings"). See Exhibit A, Declaration of William Connelly, ¶ 3.

**Plaintiff's Response: Admitted.**

4. William Connelly was not equipped with a body camera at the time of the traffic stop and his unit was not equipped with a dashboard camera. See Exhibit A, Declaration of William Connelly, ¶ 4.

**Plaintiff's Response: Qualified.** This statement is deemed admitted solely for purposes of summary judgment.

5. William Connelly was never issued a body camera during his employment with the West Baton Rouge Parish Sheriff's Office, nor was his unit ever equipped with a dashboard camera. See Exhibit A, Declaration of William Connelly, ¶ 5.

**Plaintiff's Response: Qualified.** This statement is deemed admitted solely for purposes of summary judgment.

6. At the time of the subject traffic stop, only two WBRSO units were equipped with dashboard cameras. No deputies were issued body cameras. See Exhibit A, Declaration of William Connelly, ¶ 6.

**Plaintiff's Response: Qualified.** This statement is deemed admitted solely for purposes of summary judgment.

7. Prior to conducting the traffic stop, William Connelly observed Plaintiff's vehicle make multiple lane changes without signaling; cross the solid yellow line of the roadway; and partially leave the roadway. See Exhibit A, Declaration of William Connelly, ¶ 7.

**Plaintiff's Response: Denied.** Defendant Connelly was first observed driving behind Ms. Mills in the left-hand passing lane. ECF 226-7, Deposition of Plaintiff Nia Mills ("Mills Dep. Tr.") 20:1–17.1. Ms. Mills did not make multiple lane changes; rather, she was driving in the right lane on cruise control behind a semi-truck, before she activated her blinker and entered the left lane to pass the semi-truck. ECF 226-7, Mills Dep. Tr. 87:7– 12. Ms. Mills denies that her tires crossed the solid yellow line of the roadway. ECF 226-7, Mills Dep. Tr. 86:25–87:5. While attempting to pass the semi-truck, Ms. Mills noticed Defendant Connelly driving behind her in an unmarked white truck. ECF 226-7, Mills Dep. Tr. 20:1–8. Once Defendant Connelly activated his lights, Ms. Mills slowed her vehicle to allow the semi-truck on her right to pass, and then used her turn signal to enter the right lane; and again, using her turn signal, ultimately pulled over. ECF 226-7, Mills Dep. Tr. 20:9–17.

8. After exiting his unit, William Connelly approached the driver side of Plaintiff's vehicle. The window to the vehicle was open and he immediately detected the odor of marijuana. This occurred within less than five minutes of the beginning of the traffic stop. See Exhibit A, Declaration of William Connelly, ¶ 8.

**Plaintiff's Response: Denied.** Ms. Mills expressly denies seeing, having, or possessing any marijuana in her vehicle. ECF 226-7, Mills Dep. Tr. 25:1–26:7, 31:2–7; ECF No. 171-4, (Declaration of Nia Mills ("Mills Decl.")) ¶ 5; *see also* Ex. A Plaintiff's Supplemental Response to Interrogatory No. 7. There was no odor of marijuana emanating from the vehicle, and at no point did any member of the West Baton Rouge Sheriff's Office communicate to Ms. Mills that a marijuana odor had been detected in or coming from her vehicle. ECF 226-7, Mills Dep. Tr. 25:23–26:7, 35:8–16; ECF 171-4, Mills Decl. ¶¶ 4, 6. Ms. Mills was never prosecuted for possession of marijuana. ECF 226-7, Mills Dep. Tr. 45:8–10, 86:2–19; ECF 171-4, Mills Decl. ¶8.

9. William Connelly identified himself to Plaintiff and explained why he pulled her over. He also asked her to produce her driver's license, insurance documentation, vehicle

2

registration and to exit the car.  Plaintiff then identified herself as Nia Mills, explained that the car she was driving was a rental and could only produce the rental agreement for the car. See Exhibit A, Declaration of William Connelly, ¶ 9.

**Plaintiff's Response: Qualified.** This statement is disputed insofar as it is compound, it assumes or refers to facts not herein stated related to what Defendant Connelly explained, it assumes Defendant Connelly asked Ms. Mills to exit the car at the outset of the traffic stop, and it states that Ms. Mills "could only produce the rental agreement for the car."  When Defendant Connelly approached Ms. Mills's vehicle, she rolled down the window and asked why she was being pulled over.  Ex. B, Mills Dep. Tr. 21:1–7; 22:7–11; 22:18–25.  Defendant Connelly responded that Ms. Mills's tires had "touched the yellow line," followed by a statement that he was looking for stolen vehicles in the area.  Ex. B, Mills Dep. Tr. 23:1–4.  Ms. Mills informed him that the car was not stolen but rented in her name and produced the relevant rental papers along with her driver's license.  Ex. B, Mills Dep. Tr. 23:5–8; ECF 229-12, September 13, 2023 Deposition of William Allen Connelly ("Connelly I Dep. Tr.") 18:3–12; 19:1–6.  Then, Defendant Connelly returned to his vehicle with Ms. Mills's documentation to "check it out," for approximately five minutes.  Ex. B, Mills Dep. Tr. 23:9–12; 24:18–23.  Defendant Connelly eventually returned from his vehicle with Ms. Mills's documents, advised her that her documents checked out, directed her to exit the car so he could show her the yellow line she allegedly crossed, and finally told Ms. Mills she was good to go. ECF 226-7, Mills Dep. Tr. 26:17–27:4.

10. William Connelly verbally mirandized Plaintiff and asked if there was anything illegal in the car.  She stated there was not. See Exhibit A, Declaration of William Connelly, ¶ 10.

**Plaintiff's Response: Denied.**  This statement is disputed insofar as it is compound and contains two or more separate statements.  Defendant Connelly did not "mirandize" Plaintiff at any point that day.  ECF 226-7, Mills Dep. Tr. 30:20–23. Defendant Connelly did not ask Ms. Mills if there was anything illegal in the car. ECF 226-7, Mills Dep. Tr. 26:17–27:12. Louisiana Code of Criminal Procedure 218.1A provides the following: "When any person has been arrested or detained in connection with the investigation or commission of any offense, [s]he shall be advised fully of the reason for [her] arrest or detention, [her] right to remain silent, [her] right against self incrimination, [her] right to the assistance of counsel and, if indigent, [her] right to court appointed counsel."  It is undisputed that Defendant Connelly did not advise Ms. Mills, at any time, that he was detaining her based on his suspicion of marijuana usage.  ECF 229-12, Connelly I Dep. Tr. 20:9–23.

11. William Connelly informed Plaintiff he smelled marijuana in the interior of the car and asked Plaintiff where she was travelling to.  Plaintiff responded, "We are on our way to Texas to buy weed, I mean a car." See Exhibit A, Declaration of William Connelly, ¶ 11.

**Plaintiff's Response: Denied.**  Defendant Connelly did not at any point during the stop indicate to Ms. Mills that he smelled marijuana, ECF 226-7, Mills Dep. Tr. 35:8–16, 86:20–24; that he suspected Ms. Mills of driving while under the influence of marijuana, ECF 226-7, Mills Dep. Tr. 26:1–5, 86:5–6, 13–19; or that he suspected Ms. Mills's vehicle contained marijuana. ECF 226-7,

Mills Dep. Tr. 26:25–27:4. Defendant Connelly testified at deposition that he only cited improper lane change as the reason for the traffic stop and did not specifically tell Ms. Mills that she was being questioned at any point due to his alleged belief her vehicle contained marijuana. ECF 229-12,, Connelly I Dep. Tr. 19:9–19, 20:9–15; ECF 171-4, Mills Decl. ¶ 6. The vehicle did not smell of marijuana. ECF 226-7, Mills Dep. Tr. 25:1–26:7; 35:8–16; ECF 171-4, Mills Decl. ¶ 4. Ms. Mills informed Defendant Connelly that she was driving to Texas to buy a car when she felt traumatized and unsafe at the Narcotics Office of West Baton Rouge Sheriff's Office ("WBRSO"). ECF 226-7, Mills Dep. Tr. 74:1–5; 74:12–75:9. Ms. Mills did not make the preposterous statement attributed to her in this paragraph. ECF 226-7, Mills Dep. Tr. 27:24–28:2.

12. William Connelly asked Plaintiff to identify where she was going to buy a car, and she could not give him a location. See Exhibit A, Declaration of William Connelly, ¶ 12.

**Plaintiff's Response: Denied.** This statement is denied insofar as Defendant Connelly never asked Plaintiff to identify where she was going to buy a car. ECF 226-7, Mills Dep. Tr. 74:1–5.

13. Plaintiff's statements, coupled with the smell of marijuana emanating from the vehicle, initially caused him to believe Plaintiff and her vehicle's occupant may have been trafficking drugs. See Exhibit A, Declaration of William Connelly, ¶ 13.

**Plaintiff's Response: Denied.** Plaintiff's vehicle did not smell of marijuana. ECF 226-7, Mills Dep. Tr. 25:1–26:7, 35:8–16; ECF 171-4, Mills Decl. ¶ 4. Defendant Connelly himself denied that he "suspected [Plaintiff] of trafficking, initially." ECF 229-15, February 13, 2025 Deposition of William Connelly ("Connelly Dep. II Tr.") 123:21–23. Because Plaintiff's vehicle did not smell of marijuana, Plaintiff also denies that Defendant Connelly had cause "to believe [she] and her vehicle's occupant may have been trafficking drugs."

14. Problematically, Plaintiff also refused to identify her passenger, claiming she did not know his name. William Connelly later learned her passenger was Cory Catchings. See Exhibit A, Declaration of William Connelly, ¶ 14.

**Plaintiff's Response: Denied.** Plaintiff never told Defendant Connelly she did not know her passenger's name. ECF 226-7, Mills Dep. Tr. 27:18–23. Defendant Connelly did not ask Plaintiff to identify her passenger but instead asked her passenger to identify himself. ECF 226-7, Mills Dep. Tr. 28:12–15. Plaintiff is not in possession of facts to dispute or admit when Defendant Connelly learned Mr. Catchings's name. Plaintiff further disputes this statement as argumentative and vague, incomprehensible, incomplete, or ambiguous insofar as use of the term "[p]roblematically" by Defendant Connelly is not intended to elicit new information and not an uncontested fact. Fed. R. Evid. 403; Fed. R. Evid. 611.

15. William Connelly asked Plaintiff to stay at the rear of her car so that her passenger could be identified by him due to his belief Plaintiff and her passenger were engaging in criminal activity. See Exhibit A, Declaration of William Connelly, ¶ 15.

**Plaintiff's Response: Qualified.** This statement is denied insofar as Defendant Connelly did not

state at any point during the stop that he believed that Plaintiff or her passenger were engaging in criminal activity. ECF 229-12, Connell Dep. I Tr. 19:1–21:21.  Defendant Connelly told Plaintiff that her identification and papers "checked out," ECF 226-7, Mills Dep. Tr. 26:19–20, and that she was "good to go[,]" but that he first wanted to check her passenger's identification. ECF 226-7, Mills Dep. Tr. 27:3–17.

16. William Connelly did not, at any point, tell Nia Mills she was "good to go." See Exhibit A, Declaration of William Connelly, ¶ 16.

**Plaintiff's Response: Denied.**  Defendant Connelly told Ms. Mills she was "good to go[]" after he told her to exit the car and before he asked Mr. Catchings for identification.  ECF 226-7, Mills Dep. Tr. 26:17–27:17.

17. William Connelly did not indicate to Plaintiff or her passenger at any time that he was concluding the traffic stop.  The traffic stop concluded once Plaintiff was placed under arrest for possession of marijuana. See Exhibit A, Declaration of William Connelly, ¶ 17.

**Plaintiff's Response: Denied.**  Defendant Connelly told Ms. Mills she was "good to go[]" after he told her to exit the car and before he asked Mr. Catchings for identification.  ECF 226-7, Mills Dep. Tr. 26:17–27:17.  Plaintiff also disputes the second sentence of this statement as assuming facts not in evidence insofar as it contains as a predicate a statement of fact not yet proven—that "the traffic stop concluded once Plaintiff was placed under arrest for possession of marijuana." Fed. R. Evid. 403; Fed. R. Evid. 611.

18. William Connelly approached the passenger side window and observed Catchings reaching into his waistband.  Given Catchings' actions and the smell of marijuana, he asked Catchings to keep his hands visible and to produce identification to aid him in identifying him and to check for any outstanding warrants.   William Connelly then observed marijuana residue in plain view on the center console of the vehicle. See Exhibit A, Declaration of William Connelly, ¶ 18.

**Plaintiff's Response: Denied.**  The vehicle did not smell of marijuana.  ECF 226-7, Mills Dep. Tr. 24:25–26:7; 35:8–16; ECF 171-4, Mills Decl. ¶ 4. Ms. Mills admits that Defendant Connelly asked Mr. Catchings to produce identification. ECF 226-7, Mills Dep. Tr. 28:12–13. Mr. Catchings did not have any identification on him, ECF 226-7, Mills Dep. Tr. 28:14–15, and he repeatedly told Defendant Connelly that he did not have any identification on him. ECF 226-7, Mills Dep. Tr. 28:10–15; 30:10–13.  Further, there was no marijuana residue in plain view on the center console of the vehicle or any other part of the vehicle, as there was not any marijuana in the vehicle.  ECF 226-7, Mills Dep. Tr. 25:1–26:7, 31:2–7; ECF 171-4, Mills Decl. ¶ 5.

19. William Connelly asked Catchings to produce his identification again and, once again, he reached for his waistband. William Connelly then asked Catchings to exit the vehicle and to place his hands on the car so that a Terry frisk could be conducted. See Exhibit A, Declaration of William Connelly, ¶ 19.

**Plaintiff's Response: Denied.** According to his own deposition testimony, Defendant Connelly did not ask Catchings to exit the vehicle based on his belief that Catchings was potentially reaching for a weapon. ECF 229-12, Connelly I Dep. Tr. 45:25–46:12. According to Defendant Connelly, he asked Catchings to exit the vehicle to conduct a search of the vehicle and pat him down as part of routine male pat–downs prior to vehicular searches. ECF 229-12, Connelly I Dep. Tr. 45:25–46:12.

20. Catchings initially complied. But as William Connelly reached for Catchings' waistband, Catchings spun around and struck him. Catchings then fled the scene of the traffic stop towards the Hampton Inn Hotel on Commercial Drive. This act occurred approximately ten (10) minutes after the traffic stop began. See Exhibit A, Declaration of William Connelly, ¶ 20.

**Plaintiff's Response: Qualified.** Mr. Catchings did not strike Defendant Connelly. ECF 226-7, Mills Dep. Tr. 30:7–9. By Defendant Connelly's own testimony, Mr. Catchings did not strike him but "spun" and hit Defendant Connelly "in the shoulder, *not a punch*, but spinning, hit [Defendant Connelly], trying to get [Defendant Connelly] off of him," ECF 229-12, Connelly I Dep. Tr. 50:20–22 (emphasis added). Defendant Connelly went on to testify that Mr. Catchings's quick turnaround "happened fast" and "[i]t was either his elbow or his fist hit me in the shoulder." ECF 229-12, Connelly I Dep. Tr. 52:5–10. However, Mr. Catchings did become frightened when Defendant Connelly escalated the traffic stop and ran away. ECF 226-7, Mills Dep. Tr. 29:19–25; 30:1–6. The direction in which Mr. Catchings ran is denied as an immaterial fact. The last sentence of this statement—"[t]his act occurred approximately ten (10) minutes after the traffic stop began"—is admitted for the purposes of this summary judgment proceeding only. Plaintiff further disputes this statement as compound insofar as it contains two or more separate statements. Fed. R. Evid. 403; Fed. R. Evid. 611.

21. By Plaintiff's own estimation, Catchings fled the scene of the traffic stop between five and twenty minutes after it began. See Exhibit B, Plaintiff's Supplemental Response to Interrogatory Number 4.

**Plaintiff's Response: Admitted.**

22. Ms. Mills did not attempt to retrieve her cell phone after this occurred, and William Connelly did not tell her, "You did not see anything, you were looking at the street." See Exhibit A, Declaration of William Connelly, ¶ 21.

**Plaintiff's Response: Denied.** At her deposition, Ms. Mills testified that "When Cory ran, I tried to go to the car to get my phone. The officer told me to stop, so I froze. He told me I didn't see anything. That I was looking at the street." ECF 226-7, Mills Dep. Tr. 31:19–22.

23. William Connelly radioed dispatch and requested assistance in detaining Catchings. In doing so, he provided Catchings' physical description and reported Catchings was possibly armed given his repeated movements towards his waistband. John Gaudet heard the call and responded. See Exhibit A, Declaration of William Connelly, ¶ 22.

**Plaintiff's Response: Qualified.** This statement is denied insofar as Mr. Catchings was not armed on March 26, 2021 and did not make "repeated movements towards his waistband." In the Evidence Log Sheet completed by Defendant Connelly on March 26, 2021, there are no weapons or firearms listed or described as evidence confiscated by Connelly. *See* ECF 229-3. Plaintiff admits that Defendant Connelly radioed dispatch and requested assistance in detaining Catchings, and Plaintiff admits that Defendant Gaudet heard the call and responded. Plaintiff also denies this statement insofar as Connelly purports to have given an accurate description of Mr. Catchings. This statement is further disputed as compound insofar as it contains two or more separate statements. Fed. R. Evid. 403; Fed. R. Evid. 611.

24. William Connelly did not know why Catchings fled and given Catchings' actions and the presence of marijuana in the vehicle, he detained Plaintiff; however, Plaintiff had been mirandized, was permitted to stand outside of her car and was not handcuffed until after Catchings had been apprehended. See Exhibit A, Declaration of William Connelly, ¶ 23.

**Plaintiff's Response: Qualified.** This statement is denied insofar as Plaintiff testified that there was no marijuana in her vehicle, nor was she shown any marijuana recovered from the vehicle. ECF 226-7, Mills Dep. Tr. 25:1–25:12; 31:2–7; 45:1–4, 25; 46:3–8, 23–25; 86:5–6. Further, Defendant Connelly did not "mirandize" Plaintiff at any point that day. ECF 226-7, Mills Dep. Tr. 30:20–23. Ms. Mills was handcuffed and told to sit behind her vehicle "at some point" after Mr. Catchings fled. *Id.* at 36:12–14. This statement is further disputed as compound insofar as it contains two or more separate statements. Fed. R. Evid. 403; Fed. R. Evid. 611.

25. William Connelly asked Plaintiff what would have caused Catchings to run from the scene, and Plaintiff remained silent. He did not search the vehicle at that time as he was the only deputy on the scene and was concerned for his safety. As such, William Connelly waited for John Gaudet to return to the scene of the traffic stop. See Exhibit A, Declaration of William Connelly, ¶ 24.

**Plaintiff's Response: Qualified.** This statement is disputed insofar as Connelly did not ask Ms. Mills what would have caused Mr. Catchings to run from the scene. According to Ms. Mills, after Mr. Catchings fled, Defendant Connelly told her that "because Cory ran, [she] was under arrest." ECF 226-7, Mills Dep. Tr. 36:3–9. Defendant Connelly repeatedly told Ms. Mills, "You're going to prison." *Id.* Finally, Defendant Connelly also asked Ms. Mills "where [she and Mr. Catchings] were going, and [Ms. Mills] told him [she was] going to buy a car. *Id.* at 36:19–37:4. Defendant Connelly did not ask Ms. Mills any other questions while roadside. *Id.* In fact, Ms. Mills repeatedly asked Defendant Connelly what she did wrong, and Defendant Connelly would not reply. *Id.* at 37:5–11. This statement is further disputed as compound insofar as it contains two or more separate statements. Fed. R. Evid. 403; Fed. R. Evid. 611.

26. According to Plaintiff, she was arrested immediately after Cory Catchings fled. See Plaintiff's First Amended Complaint, R. Doc. 130, ¶ 54.

**Plaintiff's Response: Qualified.** This statement is denied insofar as Plaintiff's First Amended Complaint does not say she was arrested "immediately after Cory Catchings fled." Rather, it says:

"Defendant Connelly then informed Ms. Mills that she was under arrest. He placed Ms. Mills in handcuffs." ECF 130 ¶ 54. At her deposition, Ms. Mills testified that she was handcuffed and told to sit behind her vehicle "at some point" after Mr. Catchings fled. ECF 226-7, Mills Dep. Tr. 36:13-14.

> 27. John Gaudet is a Deputy with the West Baton Rouge Sheriff's Office ("WBRSO") and was so on March 26, 2021. See Exhibit C, Declaration of John Gaudet, ¶ 2.

**Plaintiff's Response: Admitted.**

> 28. On March 26, 2021, John Gaudet heard a call for assistance, made by William Connelly, come over his radio. In that call for assistance William Connelly stated that an individual located at the scene of a traffic stop he was conducting struck him and fled the scene. He provided a physical description of that suspect and stated the suspect was heading towards the Hampton Inn Hotel on Commercial Drive. He also stated the person may have a weapon. John Gaudet later learned this individual was Cory Catchings ("Catchings"). See Exhibit C, Declaration of John Gaudet, ¶ 3.

**Plaintiff's Response: Qualified.** This statement is disputed as compound insofar as it contains two or more separate statements. Fed. R. Evid. 403; Fed. R. Evid. 611. Plaintiff also denies this statement insofar as Mr. Catchings did not "have a weapon" on March 26, 2021. In the Evidence Log Sheet completed by Defendant Connelly on March 26, 2021, there are no weapons or firearms listed or described as evidence confiscated by Connelly. *See* ECF 229-3. Further, Plaintiff denies this statement insofar as Defendant Connelly was not "struck" by Mr. Catchings. ECF 226-7, Mills Dep. Tr. 30:7–9. According to Defendant Connelly's own testimony, Mr. Catchings did not strike him but "spun" and hit Defendant Connelly "in the shoulder, *not a punch*," but spinning, hit [Defendant Connelly], trying to get [Defendant Connelly] off of him," ECF 229-12, Connelly I Dep. Tr. 50:20–22 (emphasis added). Defendant Connelly went on to testify that Mr. Catchings's quick turnaround "happened fast" and "[i]t was either his elbow or his fist hit me in the shoulder." ECF 229-12, Connelly I Dep. Tr. 52:5–10.

> 29. There were several hotels located in the area where Catchings fled. John Gaudet entered one of the hotels and asked an employee if she had seen anyone run into the hotel recently. She responded affirmatively and gave the description of a man who matched Catchings' description and stated he may have been located on the second floor. See Exhibit C, Declaration of John Gaudet, ¶ 4.

**Plaintiff's Response: Denied.** This statement is denied as an immaterial fact. This Court has denied on prescriptive grounds Mr. Catchings's claims against Defendant Gaudet of aggravated battery and excessive force, by using the butt of his AR–15 patrol rifle upon Mr. Catchings's skull as time–barred under the current one–year Louisiana prescriptive period for claims under 42 U.S.C. §1983. ECF 127; ECF 161. This statement is further disputed as compound insofar as it contains two or more separate statements. Fed. R. Evid. 403; Fed. R. Evid. 611.

30. Believing Catchings may have been armed, John Gaudet returned to his unit, grabbed his radio, put on his bulletproof vest, and grabbed his AR-15 patrol rifle. See Exhibit C, Declaration of John Gaudet, ¶ 5.

**Plaintiff's Response: Denied.** This statement is denied as an immaterial fact. This Court has denied on prescriptive grounds Mr. Catchings's claims against Defendant Gaudet of aggravated battery and excessive force, by using the butt of his AR–15 patrol rifle upon Mr. Catchings's skull as time–barred under the current one–year Louisiana prescriptive period for claims under 42 U.S.C. §1983. ECF 127; ECF 161. This statement is further disputed as compound insofar as it contains two or more separate statements. Fed. R. Evid. 403; Fed. R. Evid. 611.

31. Shortly after returning to the lobby of the hotel, John Gaudet saw a man matching Catchings' description exiting an elevator. John Gaudet identified himself as a WBRSO Sheriff's Deputy and ordered Catchings to get on the ground. Catchings refused and, instead, ran back into the elevator. See Exhibit C, Declaration of John Gaudet, ¶ 6.

**Plaintiff's Response: Denied.** This statement is denied as an immaterial fact. This Court has denied on prescriptive grounds Mr. Catchings's claims against Defendant Gaudet of aggravated battery and excessive force, by using the butt of his AR–15 patrol rifle upon Mr. Catchings's skull as time–barred under the current one–year Louisiana prescriptive period for claims under 42 U.S.C. §1983. ECF 127; ECF 161. This statement is further disputed as compound insofar as it contains two or more separate statements. Fed. R. Evid. 403; Fed. R. Evid. 611.

32. John Gaudet was able to stop the doors from closing and, in response, Catchings struck him in the head with his elbow and grabbed his AR-15 patrol rifle. A struggle for the firearm ensued and Catchings escaped from him. See Exhibit C, Declaration of John Gaudet, ¶ 7.

**Plaintiff's Response: Denied.** This statement is denied as an immaterial fact. This Court has denied on prescriptive grounds Mr. Catchings's claims against Defendant Gaudet of aggravated battery and excessive force, by using the butt of his AR–15 patrol rifle upon Mr. Catchings's skull as time–barred under the current one–year Louisiana prescriptive period for claims under 42 U.S.C. §1983. ECF 127; ECF 161. This statement is further disputed as compound insofar as it contains two or more separate statements. Fed. R. Evid. 403; Fed. R. Evid. 611.

33. Catchings fled the hotel and into the back parking lot where he was detained by other WBRSO deputies. See Exhibit C, Declaration of John Gaudet, ¶ 8.

**Plaintiff's Response: Denied.** This statement is denied as an immaterial fact. This Court has denied on prescriptive grounds Mr. Catchings's claims against Defendant Gaudet of aggravated battery and excessive force, by using the butt of his AR–15 patrol rifle upon Mr. Catchings's skull as time–barred under the current one–year Louisiana prescriptive period for claims under 42 U.S.C. §1983. ECF 127; ECF 161. Ms. Mills does not contest that Mr. Catchings was detained by officers of the WBRSO. This statement is further denied insofar as Defendant Gaudet does not have personal knowledge of the facts alleged.

34. Catchings, who had committed a felony, was arrested and charged with: 1) Possession of a Schedule I CDS; 2) Resisting an Officer; 3) Battery of a Police Officer; 4) Resisting a Peace Officer with Force or Violence; and 5) Attempted Disarming a Police Officer. R. Doc. 41-2.

**Plaintiff's Response: Denied.** This statement is denied as an immaterial fact. This Court has denied on prescriptive grounds Mr. Catchings's claims against Defendant Gaudet of aggravated battery and excessive force, by using the butt of his AR–15 patrol rifle upon Mr. Catchings's skull as time–barred under the current one–year Louisiana prescriptive period for claims under 42 U.S.C. §1983. ECF 127; ECF 161.

35. On February 10, 2023, Catchings pled guilty to the misdemeanor charge of Resisting an Officer and the felony charge of Disarming a Police Officer. See Exhibit G, 18th JDC Court Minutes relative to the matter of *State of Louisiana v. Cory Catchings*, Case Number 211322, dated February 10, 2023.

**Plaintiff's Response: Denied.** This statement is denied as an immaterial fact. This Court has denied on prescriptive grounds Mr. Catchings's claims against Defendant Gaudet of aggravated battery and excessive force, by using the butt of his AR–15 patrol rifle upon Mr. Catchings's skull as time–barred under the current one–year Louisiana prescriptive period for claims under 42 U.S.C. §1983. ECF 127; ECF 161.

36. Plaintiff's charge of possession of marijuana was clearly *nolle prossed* that same day in connection with his guilty plea on the felony charge. See Exhibit H, 18th JDC Court Minutes relative to the matter of *State of Louisiana v. Cory Catchings*, Case Number 211323, dated February 10, 2023.

**Plaintiff's Response: Denied.** This statement is denied as an immaterial fact. This Court has denied on prescriptive grounds Mr. Catchings's claims against Defendant Gaudet of aggravated battery and excessive force, by using the butt of his AR–15 patrol rifle upon Mr. Catchings's skull as time–barred under the current one–year Louisiana prescriptive period for claims under 42 U.S.C. §1983. ECF 127; ECF 161. Further, this statement is disputed as argumentative and vague, incomprehensible, incomplete, or ambiguous insofar as Ms. Mills was not "charge[d]" with possession of marijuana. Ms. Mills was issued a summons for misdemeanor possession of marijuana, for which she was never prosecuted. ECF 226-7, Mills Dep. Tr. 44:22–45:10.

37. Upon a search incident to arrest, $3567.00 in United States currency was seized off Catchings's person, based upon the good faith belief these funds were evidence of a crime involving illegal narcotics. See Exhibit C, Declaration of John Gaudet, ¶ 9.

**Plaintiff's Response: Qualified.** Plaintiff admits for the purpose of this summary judgment motion that $3567.00 was seized from Mr. Catchings. Plaintiff denies that the seizure was effected in good faith.

**Plaintiff's Objection:** This statement is hearsay because it is an out–of–court statement

10

offered for its truth. Fed. R. Evid. 801(c). Defendants have not produced a single witness to the arrest of Mr. Catchings. In order to defeat a motion for summary judgment, a non-moving party must provide evidence that meets the admissibility standards at trial. *Bellard v. Gautreaux*, 675 F.3d 454, 460-61 (5th Cir. 2012). Rule 56(c)(2) allows a party to object that "the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." When that material is a declaration, Rule 56(c)(4) requires that it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." And when the declaration contains inadmissible hearsay that cannot be cured by the proper declarant at trial, it may be excluded. *See, e.g. Bellard*, 675 F.3d at 461 (affirming exclusion of statements offered in support of summary judgment as hearsay because the declarant was "trying to admit evidence of his own recollection of what someone else said in a conversation with him"); *Thomas v. Atmos Energy Corp.*, 223 F. App'x 369, 374 (5th Cir. 2007) (affirming district court ruling excluding portions of an affidavit that contained inadmissible hearsay); *Hensley v. Harrell*, No. CV 21-517-SDD-SDJ, 2024 WL 3513869, at *1 (M.D. La. July 22, 2024) (refusing to consider hearsay evidence submitted at summary judgment and denying qualified immunity). Accordingly, Plaintiff denies this statement insofar as it is not based on Defendant Gaudet's personal knowledge because Gaudet himself did not apprehend Mr. Catchings. Ex. C, Deposition Transcript of John Gaudet, 25:24–26:7.

38. After Catchings was apprehended, John Gaudet arrived at the scene of the traffic stop. Given the smell of marijuana emanating from Plaintiff's vehicle, William Connelly established probable cause to conduct a warrantless search of the interior of that vehicle. See Exhibit A, Declaration of William Connelly, ¶ 25.

**Plaintiff's Response: Denied.** This statement is denied insofar as it is not a statement of uncontested fact but rather a conclusory allegation as to the existence of probable cause. There was no smell of marijuana emanating from Plaintiff's vehicle. ECF 226-7, Mills Dep. Tr. 25:23–26:7; 35:8–16. Plaintiff testified that there was no marijuana in her vehicle, she did not smoke marijuana in the vehicle, and she was never shown any marijuana recovered from the vehicle. ECF 226-7, Mills Dep. Tr. 25:1–25:12; 31:2–7; 45:1–4, 25; 46:3–8, 23–25; 86:5–6. Plaintiff further disputes this statement as compound insofar as it contains two or more separate statements. Fed. R. Evid. 403; Fed. R. Evid. 611. Plaintiff also disputes this statement as it is a triable issue of fact and attempts to weigh the evidence, which is inappropriate at the summary judgment stage. *See Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) ("In reviewing the evidence, the court must refrain from making credibility determinations or weighing the evidence.").

39. Given the smell of marijuana in the vehicle, William Connelly and John Gaudet performed a probable cause search of the interior of Plaintiff's vehicle, at which time a bag of marijuana was found. John Gaudet also noticed marijuana residue located on the vehicle's center console and smelled the odor of marijuana in the vehicle. See Exhibit C, Declaration of John Gaudet, ¶ 11.

**Plaintiff's Response: Denied.**  This statement is denied insofar as it is not a statement of uncontested fact but rather a conclusory allegation as to the existence of probable cause. There was no smell of marijuana in Plaintiff's vehicle. ECF 226-7, Mills Dep. Tr. 25:23–26:7; 35:8–16. Plaintiff testified that there was no marijuana in her vehicle, she did not smoke marijuana in the vehicle, and she was never shown any marijuana recovered from the vehicle. ECF 226-7, Mills Dep. Tr. 25:1–25:12; 31:2–7; 45:1–4, 25; 46:3–8, 23–25; 86:5–6. Defendant Connelly testified that he did not take any photos at any point during the search of the vehicle or of the items allegedly seized from the vehicle. ECF 229-12, Connelly I Dep. Tr. 40:20–24. Gaudet testified that he never saw a bag of marijuana. Ex. C, Gaudet Dep. Tr. 54:22–55:7.  Plaintiff also disputes this statement as compound insofar as it contains two or more separate statements.  Fed. R. Evid. 403; Fed. R. Evid. 611.  Further, Plaintiff disputes this statement as it is a triable issue of fact and attempts to weigh the evidence, which is inappropriate at the summary judgment stage. *See Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) ("In reviewing the evidence, the court must refrain from making credibility determinations or weighing the evidence.").

40. William Connelly recovered a physical Cash App plastic card from Plaintiff's purse. When Plaintiff and William Connelly returned to the Narcotics Office, he swiped the card in the office's ERAD machine.  See Exhibit A, Declaration of William Connelly, ¶ 27.

**Plaintiff's Response: Qualified.**  Defendant Connelly recovered a total of seven cards from Ms. Mills, including validly issued credit cards in her name, a Cash App card, and a wages card.  *See* ECF 226-20 (Ex. 18, Redacted Photos of Cards).  Plaintiff admits that Defendant Connelly swiped her Cash App card in the ERAD machine once he returned to the Narcotics Office.

41. ERAD also permits law enforcement officers to determine if plastic cards bearing a magnetic strip are fraudulent cards or are cards which contain stolen credit card information. See Exhibit A, Declaration of William Connelly, ¶ 28.

**Plaintiff's Response: Admitted for summary judgment purposes only.**

42. Having lawfully seized Plaintiff's Cash App Car, I ran two account balance inquiries on that card.  This fact is evidenced by the document provided by Plaintiff during discovery displaying the following notation: "Lea Balance Check Erad."  The first was in the amount of $5,000.00 and the second was in the amount of $1,000.00.  This search was conducted solely to determine if Plaintiff had large sums of money in her account, which would provide evidentiary support as to my suspicion Plaintiff was involved in the illegal trafficking of drugs. See Exhibit A, Declaration of William Connelly, ¶ 29.

**Plaintiff's Response: Qualified.**  This statement is denied insofar as it is not a statement of uncontested fact but rather a conclusory allegation as to whether Defendant Connelly "lawfully seized Plaintiff's Cash App Car[d]".

**Plaintiff's Objection:** Plaintiff disputes this statement as compound insofar as it contains two or more separate statements.  Fed. R. Evid. 403; Fed. R. Evid. 611.  Further, Plaintiff disputes this statement as it is a triable issue of fact and attempts to weigh the evidence, which is inappropriate

at the summary judgment stage. *See Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) ("In reviewing the evidence, the court must refrain from making credibility determinations or weighing the evidence.").

43. The ERAD results did not provide William Connelly with the balances of Plaintiff's checking or savings accounts. See Exhibit A, Declaration of William Connelly, ¶ 30.

**Plaintiff's Response: Qualified.**  At his deposition, Defendant Connelly testified that "some of the cards gave back balances, some did not. I would have to look at that. But I believe there were some account balances that showed up." ECF 229-15, Connelly II Dep. Tr. 149:6–16. Defendant admits in Statement 42 that the ERAD alerted Defendant that Plaintiff did not have as much as $1,000 in her Cash App account.

44. Steve Beckerman ("Beckerman"), the Chief Operating Officer of the ERAD group, was deposed at great length by Plaintiff on April 14, 2025. During that deposition, Beckerman testified that the balances for debit cards and credit cards *cannot* be determined by using the ERAD reader. In fact, Beckerman spoke about Connelly's use of ERAD relative to Plaintiff's CashApp card and specifically stated that her account balance was not disclosed to Connelly. See Exhibit K, Deposition Transcript of Steve Beckerman, page 16, lines 5- 8 and pages 18-19.

**Plaintiff's Response: Qualified.**  Plaintiff disputes this statement as compound insofar as it contains two or more separate statements.  Fed. R. Evid. 403; Fed. R. Evid. 611.  Plaintiff further disputes this statement as a mischaracterization of Mr. Beckerman's testimony—Mr. Beckerman said that "[i]f it's a debit card *attached to a checking account* or a credit card, then the system is unavailable for our balance check."  ECF 227-16, (Deposition of Steven Beckerman – Part Two) 16:5–8 (emphasis added).  The last sentence of this statement is admitted for summary judgment purposes only.

45. The Interstate 10 corridor is a primary route used by drug traffickers in this region. See Exhibit A, Declaration of William Connelly, ¶ 36.

**Plaintiff's Response: Denied.**  This sentence is denied insofar as it is not a statement of uncontested fact but rather assumes a fact not in evidence and contains as a predicate a statement of a fact not proven—that "[t]he Interstate 10 corridor is a primary route used by drug traffickers in this region."

46. Rental cars, in particular, are frequently used to transport drugs across the Interstate 10 corridor. See Exhibit A, Declaration of William Connelly, ¶ 37.

**Plaintiff's Response: Denied.**  This sentence is denied insofar as it is not a statement of uncontested fact but assumes a fact not in evidence—that "[r]ental cars, in particular, are frequently used to transport drugs across the Interstate 10 corridor."  Rather, this statement is a lay opinion that is not based on Defendant Connelly's personal knowledge or sensory perception.

47. At no time did William Connelly or any other member of the WBRSO attempt to withdraw money from Plaintiff's Cash App card, or any other financial institution associated with Plaintiff. See Exhibit A, Declaration of William Connelly, ¶ 37.

**Plaintiff's Response: Denied.** This sentence is denied insofar as it is immaterial for summary judgment purposes.

48. Neither William Connelly nor Deputy John Gaudet told Plaintiff that if she spoke she would go to prison. See Exhibit A, Declaration of William Connelly, ¶ 38.

**Plaintiff's Response: Denied.** Ms. Mills testified at her deposition that Defendant Connelly repeatedly told her "You're going to prison." ECF 226-7, Mills Dep. Tr. 36:5–9. At the Narcotics Office, various WBRSO employees, including Defendants Gaudet and Conelly, told Plaintiff that she "couldn't talk or [she] was going to go to prison." *Id.* at 50:15–19; 51:20–52:2.

49. No WBRSO deputy told Plaintiff to "shut up," called her an immigrant, told her that she did not have any rights, or tell her she would be deported at any time for any reason. See Exhibit A, Declaration of William Connelly, ¶ 39.

**Plaintiff's Response: Denied.** Ms. Mills testified the following at her deposition: "…And that's when I finally stood up for myself and said, 'What you guys are doing is illegal.' And they told me to shut up. That I was an immigrant because I wasn't born in this country -- because they had my passport. They could see that I wasn't born in the U.S. I was born in Switzerland. They told me I didn't have any rights. And that if I spoke again, they would deport me." ECF 226-7, Mills Dep. Tr. 58:20–59:4.

50. Mr. Catchings did not cry in pain, nor did William Connelly kick a door or tell Mr. Catchings to shut up. See Exhibit A, Declaration of William Connelly, ¶ 40.

**Plaintiff's Response: Denied.** Ms. Mills testified at her deposition "I remember hearing Cory crying like he was in pain. And he came back out of the room, he kicks the door, and tells Cory to shut up. And he goes back in the room." ECF 226-7, Mills Dep. Tr. 62:16–19.

51. William Connelly asked for Plaintiff's consent to search her phone and her laptop. In doing so, he advised her that if she did not provide consent, the items would be retained by William Connelly so that he could seek a search warrant from a judge to conduct a lawful search of those items, which would take some time. As such, she would not be able to leave with those items. See Exhibit A, Declaration of William Connelly, ¶ 41.

**Plaintiff's Response: Denied.** This statement is denied insofar as Defendant Connelly did not tell Ms. Mills that he would obtain a warrant from a judge to search her cellular phone or laptop. Instead, he said that if she wanted to leave with those items, she would have to consent to a search. ECF 226-7, Mills Dep. Tr. 65:21–66:5. Ms. Mills testified that Defendant Connelly told her she had to consent to the search of her phone and laptop, ECF 226-7, Mills Dep. Tr. 66:20–67:4, and that she felt coerced in to letting him conduct the search. ECF 226-7, Mills Dep. Tr. 67:5–17.

**Plaintiff's Objection:** Plaintiff disputes this statement as compound insofar as it contains two or more separate statements. Fed. R. Evid. 403; Fed. R. Evid. 611. Plaintiff further disputes this statement as it is a triable issue of fact and attempts to weigh the evidence, which is inappropriate at the summary judgment stage. *See Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) ("In reviewing the evidence, the court must refrain from making credibility determinations or weighing the evidence.").

52. William Connelly could not have allowed Plaintiff to leave with her phone and computer and applied for a search warrant after she left the Narcotics Office without risking that Plaintiff would have destroyed incriminating evidence on either of her devices. See Exhibit A, Declaration of William Connelly, ¶ 42.

**Plaintiff's Response: Denied.** This statement is denied insofar as it is not a statement of uncontested fact; rather, it assumes facts not in evidence because it contains as a predicate a statement of fact not proven—that "Plaintiff would have destroyed incriminating evidence on either of her devices." Defendant Connelly testified that he did not see any signs of "illegal activity" when he searched Ms. Mills's devices, and that there was "no trafficking evidence [he] could see." ECF 229-12, Connelly I Dep. Tr. 104:1–8.

**Plaintiff's Objection:** Plaintiff objects to this statement as it is a triable issue of fact and attempts to weigh the evidence, which is inappropriate at the summary judgment stage. See Deville v. Marcantel, 567 F.3d 156, 164 (5th Cir. 2009) ("In reviewing the evidence, the court must refrain from making credibility determinations or weighing the evidence.").

53. Rather than wait for the issuance of a search warrant and wanting to leave with her phone and laptop, Plaintiff consented to the search of her phone and her laptop. Her phone was inaccessible without a passcode, which Plaintiff freely provided to William Connelly. See Exhibit A, Declaration of William Connelly, ¶ 43.

**Plaintiff's Response: Denied.** This statement is denied insofar as it is not a statement of uncontested fact but rather a conclusory allegation as to whether Plaintiff validly "consented to the search of her phone and her laptop." Ms. Mills testified that Defendant Connelly told her she had to consent to the search of her phone and laptop, ECF 226-7, Mills Dep. Tr. 66:20–67:4, and that she felt coerced in to letting him conduct the search. ECF 226-7, Mills Dep. Tr. 67:5–17.

**Plaintiff's Objection:** Plaintiff objects to this statement as vague, incomprehensible, incomplete, or ambiguous insofar as use of the phrase "freely provided" by Defendant is not an uncontested fact. In its November Order on Defendant's Motion for Summary Judgment, this Court stated that "under Plaintiff's version of events, consent was not voluntary." ECF 195, p. 22. Plaintiff further objects to this statement as it is a triable issue of fact and attempts to weigh the evidence, which is inappropriate at the summary judgment stage. *See Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) ("In reviewing the evidence, the court must refrain from making credibility determinations or weighing the evidence.").

54. Because William Connelly believed Plaintiff may have been trafficking drugs, he was searching for messages or photographs which would corroborate his belief. However, William Connelly was also looking for messages regarding her plan to purchase a car, which would have corroborated Plaintiff's innocence, at least regarding drug trafficking. See Exhibit A, Declaration of William Connelly, ¶ 44.

**Plaintiff's Response: Qualified.** This statement is denied insofar as it is not a statement of uncontested fact but rather a conclusory allegation as to whether Plaintiff validly "consented to the search of her phone and her laptop." Moreover, despite being issued a summons for misdemeanor possession of marijuana, Ms. Mills was never prosecuted. ECF 226-7, Mills Dep. Tr. 44:22–45:10.

**Plaintiff's Objection:** Plaintiff objects to this statement as compound insofar as it contains two or more separate statements. Fed. R. Evid. 403; Fed. R. Evid. 611. Plaintiff objects to this statement as vague, incomprehensible, incomplete, or ambiguous insofar as use of the phrase "Plaintiff's innocence, at least regarding drug trafficking" is not an uncontested fact. Ms. Mills was issued a summons for misdemeanor possession of marijuana, for which she was never prosecuted. ECF 226-7, Mills Dep. Tr. 44:22–45:10. Ms. Mills was never charged or prosecuted for criminal activity as a result of the events on March 26, 2021; therefore, her "innocence" is a mischaracterization and not an uncontested material fact for summary judgment purposes.

55. William Connelly did not, at any time, uncover evidence showing Plaintiff was traveling to Texas to buy a car, nor did Plaintiff ever provide him with any such evidence. See Exhibit A, Declaration of William Connelly, ¶ 45.

**Plaintiff's Response: Denied.** Ms. Mills told Defendant Connelly that she was going to buy a car while waiting for Defendant Gaudet to return to the scene of the traffic stop. ECF 226-7, Mills Dep. Tr. 36:22–25. After Defendant Connelly searched her phone and laptop, Ms. Mills provided him with the name and address of the car dealership she was traveling to in Texas to buy a car, as well as the name of the car dealer. ECF 226-7, Mills Dep. Tr. 74:1–5.

56. Plaintiff's vehicle was seized and impounded due to the fact it contained marijuana. This impoundment was made at the request of the Hertz Rental Car Company, who was the owner of the vehicle. See Exhibit A, Declaration of William Connelly, ¶ 46.

**Plaintiff's Response: Qualified.** This statement is denied insofar as Defendant Connelly, in response to Plaintiff's Interrogatory 12, has disavowed impounding Plaintiff's rental car. Ex. D, Connelly ROGs Set Two. This statement is also denied insofar as it contains as a predicate a statement of a fact not proven and assumes a fact not in evidence, i.e., that Plaintiff's car was impounded "at the request of the Hertz Rental Car Company." Defendants have not obtained any statements from the Hertz rental agency. In Defendants' response to Plaintiff's Interrogatory 14, Sheriff Cazes of the WBRSO has stated "the identity of the person who contacted Hertz is unknown and he is unaware of any documentation which would reveal the identity of this person. It is possible an employee of the wrecker company contacted Hertz directly, but that is speculation. It is also possible somebody from dispatch contacted Hertz, but that is also

16

speculation. Individuals acting as dispatchers are not employees of the West Baton Rouge Parish Sheriff's Office." Ex. E, Defendant Michael Cazes's Responses to Plaintiff's Interrogatories, Set Two ("Cazes ROGs Set Two"), No. 14.  Plaintiff admits that her rental car was impounded.

**Plaintiff's Omnibus Objection Defendant's Statements 57-59:** These statements are inadmissible due to their consisting of double hearsay, revealing a witness undisclosed months after the close of fact discovery, and constituting unexplained, contradictory "evidence" after Defendant's two depositions and multiple declaration submissions.

The newly recovered "facts" in Defendant Connelly's new affidavit not only contradicts his prior testimony, they also point to an apparently known but never disclosed fact witness. During his first deposition on September 13, 2023, in reference to Hertz, he stated that "I can't remember who contacted them." ECF 229-12, Connelly I Dep. 106: 7–8. In his second deposition, on February 13, 2025, when asked again if he knew who made the decision to impound the car, Defendant Connelly insisted multiple times he did not recall to whom he had spoken, and even indicated it could have been Connelly himself who had spoken to Hertz. ECF 229-15, Connelly II Dep. 171: 20-25, 172:1.

Defendant Connelly's deposition and interrogatory responses from Defendant Cazes both indicate there is no WBRSO policy about contacting rental companies, and the identity of the person who supposedly contacted Hertz was unknown and undocumented. *Id.* Connelly II Dep. 172: 15-16. Defendant Connelly's August 8, 2025, declaration providing new, contradictory information that, without explanation, identifies a new witness should be disregarded. ECF 229-2.

Indeed, Defendant Connelly recalls this man sufficiently such that he knows he is someone he could reasonably trust.  Defendant Connelly's repeated references to a certain man make clear that he knows the individual's identity. *Id.*

Defendant Connelly's declaration thus refers to a witness not previously disclosed in violation of Federal Rule of Civil Procedure 26(a)(1)(A)(i) ("Rule 26(a)(1)(A)(i)"), and the Court should accordingly exclude this late-disclosed information and refuse to consider paragraphs 47 through paragraph 50 of his most recent declaration.  Rule 26(a)(1)(A)(i) requires each party to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information…that the disclosing party may use to support its claims or defenses" and to supplement disclosures in a timely manner.

Defendant Connelly failed to disclose this witness in his initial disclosures or subsequent amended disclosures or discovery responses, and Defendant Cazes failed to disclose the information in his interrogatory responses. Under Federal Rule of Civil Procedure 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a)…the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  Defendant Connelly has made no attempt to show that the failure to disclose this witness was justified or harmless, and Ms. Mills did not have the opportunity to depose or cross-examine this witness during discovery. Particularly because Defendant Connelly disclosed this

new information in response to a motion for summary judgment, the Court should exclude this evidence pursuant to Rule 37(c)(1). *See, e.g.*, *Guidry v. Aventis Pharms., Inc.*, No. CV 03-493-RET-SCR, 2005 WL 8155425, at *2 (M.D. La. Dec. 20, 2005) (excluding a party's affidavit submitted alongside their opposition for summary judgment where the affidavit contained new, previously-undisclosed information after discovery had closed); *see also Brown v. AT&T Servs. Inc.*, 236 F. Supp. 3d 1000, 1005 (S.D. Tex. 2017) ("Therefore, under Rule 37(c)(1), [plaintiff] is prohibited from using [the emails not produced in discovery] to support his opposition to the motion for summary judgment."). Discovery has long since closed in this matter with and trial is set. For all of these reasons, the Court should disregard this information and strike paragraph 47 through paragraph 50 of the declaration pursuant to Rule 37(c)(1).

In addition, these portions of the Declaration are independently inadmissible because they contain hearsay and are not admissible evidence at summary judgment or trial according to Federal Rules of Civil Procedure 56(c)(2) and 56(c)(4) and Federal Rule of Evidence ("FRE") 803. In the Declaration, Connelly now recalls that a male colleague told him he had called Hertz and told them the car had been involved in a crime (Hearsay One) and that Hertz wanted the car impounded (Hearsay Two). This Court already held this allegation as excludable hearsay in its ruling denying Defendants' Motion for Summary Judgment. *See* ECF 195 at 27–28 ("[Connelly] testified that someone said the rental car company wanted the car, and this is classic hearsay—excludable at summary judgment."). Defendant now attempts both to deny as the statement is hearsay, ECF 229 p. 20 n. 79, yet rely on both layers of the double-hearsay for the truth of the matter asserted. *See id*. p. 20 ("[W]hat is also not in dispute is … that [Hertz] advised they wanted Plaintiff's rental car impounded because it had been involved in criminal activity." Just as it was improper hearsay before, it is improper hearsay again.

In order to defeat a motion for summary judgment, a non-moving party must provide evidence that meets the admissibility standards at trial. *Bellard v. Gautreaux*, 675 F.3d 454, 460-61 (5th Cir. 2012). Rule 56(c)(2) allows a party to object that "the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." When that material is a declaration, Rule 56(c)(4) requires that it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." And when the declaration contains inadmissible hearsay that cannot be cured by the proper declarant at trial, it may be excluded. *See, e.g. Bellard v. Gautreaux*, 675 F.3d 454, 461 (5th Cir. 2012) (affirming exclusion of statements offered in support of summary judgment as hearsay because the declarant was "trying to admit evidence of his own recollection of what someone else said in a conversation with him"); *Thomas v. Atmos Energy Corp*., 223 F. App'x 369, 374 (5th Cir. 2007) (affirming district court ruling excluding portions of an affidavit that contained inadmissible hearsay); *Hensley v. Harrell*, No. CV 21-517-SDD-SDJ, 2024 WL 3513869, at *1 (M.D. La. July 22, 2024) (refusing to consider hearsay evidence submitted at summary judgment and denying qualified immunity). Accordingly, in addition to excluding paragraph 47 through paragraph 50 of Defendant Connelly's latest declaration based on Rule 37(c)(1), the Court should also disregard these portions of the declaration pursuant to Federal Rules of Civil Procedure 56(c)(2) and 56(c)(4) because they contain inadmissible hearsay.

Furthermore, it is well-established in the Fifth Circuit that a party cannot create a genuine issue of fact to survive summary judgment by contradicting his own previous testimony without explanation. *S.W.S. Erectors, Inc. v. Infax, Inc*., 72 F.3d 489, 495 (5th Cir. 1996) ("It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony."). The Court should accordingly disregard Defendant Connelly's assertions in his latest affidavit and strike paragraphs 47 through 50.

57. Prior to the vehicle being impounded, a colleague of William Connelly's from the West Baton Rouge Sheriff's Office told him he reached out to Hertz Rental Car Company and informed them of the fact marijuana was found in Plaintiff's rental car. See Exhibit A, Declaration of William Connelly, ¶ 47.

**Plaintiff's Response: Denied.** This statement is denied insofar as it contains as a predicate a statement of a fact not proven and assumes a fact not in evidence, i.e., that "a colleague of William Connelly's from the West Baton Rouge Sheriff's Office told him he reached out to Hertz Rental Car Company and informed them of the fact marijuana was found in Plaintiff's rental car."

58. This colleague told William Connelly that the Hertz Rental Car Company representative he spoke to stated the car needed to be impounded due to the fact that it was involved in criminal activity. See Exhibit A, Declaration of William Connelly, ¶ 48.

**Plaintiff's Response: Denied.** This statement is denied insofar as it contains as a predicate a statement of a fact not proven and assumes a fact not in evidence, that Plaintiff's car was "involved in criminal activity."

59. William Connelly reasonably believed what his colleague told him was true because he had no reason to doubt him, particularly in light of the fact that it is common for rental car companies, such as Hertz, to want their vehicles seized if they are involved in criminal activity. See Exhibit A, Declaration of William Connelly, ¶ 49.

**Plaintiff's Response: Denied.** This statement is denied insofar as it contains as a predicate a statement of a fact not proven and assumes a fact not in evidence, that "it is common for rental car companies, such as Hertz, to want their vehicles seized if they are involved in criminal activity."

60. William Connelly has personally contacted rental car companies in the past when their vehicles had been involved in criminal conduct and, in those instances, the rental car companies wanted their vehicles seized and impounded. See Exhibit A, Declaration of William Connelly, ¶ 50.

**Plaintiff's Response: Denied.** This statement is denied as immaterial.

**Plaintiff's Objection:** This statement is hearsay because it is an out–of–court statement offered for its truth. Fed. R. Evid. 801(c). Further, Plaintiff objects to this statement as irrelevant because it does not make any of her claims at issue more or less probable. Fed. R. Evid. 401; Fed. R. Evid. 402.

> 61. It is a common practice for WBRSO deputies to contact rental car companies to alert those companies that one of their vehicles has been involved in criminal activity. See Exhibit A, Declaration of William Connelly, ¶ 51.

**Plaintiff's Response: Denied.** This sentence is denied insofar as it is not a statement of uncontested fact but rather assumes a fact not in evidence and contains as a predicate a statement of a fact not proven. Defendants have not obtained any statements from the Hertz rental agency or any other rental car company.

**Plaintiff's Objection:** Plaintiff objects to this statement as irrelevant because it does not make any of her claims at issue more or less probable. Fed. R. Evid. 401; Fed. R. Evid. 402. Plaintiff further objects to this statement as vague, incomprehensible, incomplete, or ambiguous insofar as use of the phrase "common practice" by Defendant is not an uncontested material fact. Fed. R. Evid. 403; Fed. R. Evid. 611.

> 62. Plaintiff was issued a misdemeanor summons for her traffic violations and for her possession of marijuana, which was found in her vehicle, and she was released. The only reason Plaintiff was not arrested and booked into the jail is because the country was in the throes of the COVID pandemic and, generally speaking, those arrested for misdemeanor drug crimes were not booked in the jail due to safety concerns. See Exhibit A, Declaration of William Connelly, ¶ 52.

**Plaintiff's Response: Qualified.** This statement is admitted in so far as Plaintiff was issued a misdemeanor summons for her traffic violation and possession of marijuana. ECF 171-4, Mills Decl. ¶ 8. The remainder of the statement is denied since Plaintiff has no personal knowledge of the WBRSO COVID booking policies or procedures. Further, Defendant Connelly stated in his deposition testimony that Ms. Mills would not be arrested under the laws "today." ECF 229-12, Connelly I Dep. Tr. 108:19–109:5.

> 63. The bag of marijuana which was recovered from Plaintiff's rental car was submitted for analysis to the Louisiana Crime Lab by way of a Request for Scientific Analysis completed by Defendant. See Exhibit A, Declaration of William Connelly, ¶ 61; See also Exhibit A-2.

**Plaintiff's Response: Qualified.** This statement is denied in so far as Plaintiff was never shown any bag of marijuana recovered from her car, ECF 226-7 Mills Dep. Tr. 45:1–4, 25; 46:3–8, 23–25, 86:5–6. Defendant Connelly testified that he did not take any photos at any point during the search of the vehicle or of the items allegedly seized from the vehicle. ECF 229-12, Connelly I

Dep. Tr. 40:20–24. Defendant Connelly also admitted no body cam footage exists. ECF 229-12, B, Connelly I Dep. Tr. 40:25–41:3. Gaudet testified that he never saw a bag of marijuana. Ex. C, Gaudet Dep. Tr. 54:22–55:7. Plaintiff admits the bag was submitted for analysis to the Louisiana Crime Lab for purposes of summary judgment only.

64. The bag's contents ultimately returned a positive result for marijuana. See Exhibit F, Deposition transcript of Abby Guerin, page 74, lines 13-21. See also Exhibit F, Louisiana State Police Crime Laboratory Scientific Analysis Report, bearing Case Number N-21-034 and the names of Nia Mills and Cory Catchings.

**Plaintiff's Response: Admitted for summary judgment purposes only.**

65. Plaintiff was not asked to complete a formal "River West Narcotics Task Force Miranda Warning" form, which provides the Miranda Warning, in writing, only because she was not booked. See Exhibit A, Declaration of William Connelly, ¶ 54.

**Plaintiff's Response: Qualified.** This statement is denied insofar as it is not within Plaintiff's personal knowledge why she was "not booked." Plaintiff admits that she "was not asked to complete a formal 'River West Narcotics Task Force Miranda Warning'".

**Plaintiff's Objection:** Plaintiff objects to this statement insofar as it assumes a fact not in evidence and contains as a predicate a statement of fact not yet proven, that Ms. Mills did not complete a "formal 'River West Narcotics Task Force Miranda Warning'…only because she was not booked."

66. An inventory search of Plaintiff's rental car was performed due to the fact it was impounded. See Exhibit A, Declaration of William Connelly, ¶ 55.

**Plaintiff's Response: Qualified.** Plaintiff has no personal knowledge of the searches conducted of her vehicle after she was transported to the Narcotics Office. This statement is denied insofar as it contradicts Defendants' (specifically, Sheriff Cazes's) supplemental response to Plaintiff's Interrogatories, Set 2, No. 12: "Per Connelly's knowledge and John Barker's knowledge, no agent or employee of WBRSO entered or accessed the vehicle again after the traffic stop occurred. WBRSO is not in possession of any records detailing who, if anyone, had control or access to the subject vehicle during the time period specified." Ex. E.

67. William Connelly believed and still believes that his use of the ERAD machine on Plaintiff's plastic cards, the search of Plaintiff's purse, the search of Plaintiff's car, the search of Plaintiff's laptop, and the search of Plaintiff's phone, were reasonable in light of the information he had available to him at the time the searches were conducted. See Exhibit A, Declaration of William Connelly, ¶ 56.

**Plaintiff's Response: Denied.** This statement is denied insofar as it is not a statement of uncontested fact but rather a conclusory allegation as to Defendant Connelly's reasonable beliefs based on a totality of the circumstances.

**Plaintiff's Objection:** This statement is a triable issue of fact and attempts to make a credibility determination, which is inappropriate at the summary judgment stage. *See Deville*, 567 F.3d at 164 ("In reviewing the evidence, the court must refrain from making credibility determinations or weighing the evidence.")

> 68. No WBRSO deputy threatened Plaintiff with harm or acted in such a way that a reasonable person in Plaintiff's position would have feared for their life. See Exhibit A, Declaration of William Connelly, ¶ 57.

**Plaintiff's Response: Denied.** This statement is denied insofar as it is not a statement of uncontested fact but rather a conclusory allegation as to the reasonableness of Defendants' actions. Ms. Mills testified at her deposition that she felt "scared for [her] life" as a result of Defendants' actions on March 26, 2021. ECF 226-7, Mills Dep. Tr. 87:19–88:1. Ms. Mills also testified that she was threatened with deportation by WBRSO when she questioned the legality of their actions while in custody at the Narcotics Office. *Id.* at 58:16–59:15.

**Plaintiff's Objection:** This statement is a triable issue of fact and attempts to make a credibility determination, which is inappropriate at the summary judgment stage. *See Deville*, 567 F.3d at 164 ("In reviewing the evidence, the court must refrain from making credibility determinations or weighing the evidence.")

> 69. No WBRSO deputy acted in a manner which would have caused Plaintiff to feel traumatized or deny her a right to speak to an attorney. She did not ask to. See Exhibit A, Declaration of William Connelly, ¶ 58.

**Plaintiff's Response: Denied.** This statement is denied insofar as it is not a statement of uncontested fact but rather a conclusory allegation as to the reasonableness of Defendants' actions. Ms. Mills testified at her deposition that she felt "scared and traumatized" as a result of Defendants' actions on March 26, 2021. ECF 226-7, Mills Dep. Tr. 87:19–88:1. Ms. Mills also testified that she asked a WBRSO officer for a lawyer after she was transported to the Narcotics Office. *Id.* at 50:18–51:2. Ms. Mills recalls that in response, the officer commented "Oh, she's going to be difficult." *Id.* On March 26, 2021, Ms. Mills had a lawyer that she could have contacted, but Defendants "wouldn't let [her] call." *Id.* at 51:11–15.

**Plaintiff's Objection:** This statement is a triable issue of fact and attempts to make a credibility determination, which is inappropriate at the summary judgment stage. *See Deville*, 567 F.3d at 164 ("In reviewing the evidence, the court must refrain from making credibility determinations or weighing the evidence.")

> 70. William Connelly did not tell Plaintiff she had to sign the Notice of Pending Forfeiture nor was Plaintiff handcuffed to a bench when he presented her with the Notice of Pending Forfeiture. William Connelly told her that it contained information on how she would go about collecting any funds seized. However, it was up to her to sign it or not sign it. See Exhibit A, Declaration of William Connelly, ¶ 59.

**Plaintiff's Response: Denied.** This statement is denied insofar as it is not a statement of uncontested fact but rather a conclusory allegation as to the reasonableness of Defendants' actions. Ms. Mills was handcuffed to a bench by Defendant Connelly once she arrived at the Narcotics Office. ECF 226-7, Mills Dep. Tr. 52:3–11. She remained handcuffed to this bench when Defendant Connelly presented her with the Notice of Pending Forfeiture. *Id.* at 62:2–12; 88:2–8. At her deposition, Ms. Mills testified that "[Connelly] told me if I wanted my money back, that I had to sign [the Notice of Pending Forfeiture]. So I signed it." *Id.* at 62:2–12.

**Plaintiff's Objection:** Plaintiff objects to this statement as compound insofar as it contains two or more separate statements. Fed. R. Evid. 403; Fed. R. Evid. 611. Further, this statement is a triable issue of fact and attempts to make a credibility determination, which is inappropriate at the summary judgment stage. *See Deville*, 567 F.3d at 164 ("In reviewing the evidence, the court must refrain from making credibility determinations or weighing the evidence.")

71. William Connelly completed an "Evidence Log Sheet" relative to the traffic stop that is the subject of this litigation. See Exhibit A, Declaration of William Connelly, ¶ 60.

**Plaintiff's Response: Qualified.** This statement is denied insofar as the phrase "relative to the traffic stop that is the subject of this litigation" inaccurately characterizes the evidence. The Title of Case listed on the "Evidence Log Sheet" is *State of Louisiana v. Cory Catchings*, which is not the subject of this litigation. Plaintiff admits that Defendant Connelly completed an "Evidence Log Sheet" that describes the evidence confiscated by him on March 26, 2021.

72. William Connelly completed the document entitled "Louisiana State Police Crime Laboratory Request for Scientific Analysis," bearing file number N-21-034 and the names of Nia Mills and Cory Catchings. See Exhibit A, Declaration of William Connelly, ¶ 61.

**Plaintiff's Response: Admitted for summary judgment purposes only.**

73. William Connelly does not recall searching emails on Plaintiff's laptop. Presumptively, that would have required an additional password, which she did not provide to him. See Exhibit A, Declaration of William Connelly, ¶ 62.

**Plaintiff's Response: Qualified.** This statement is denied insofar as the second sentence is purely speculative.

**Plaintiff's Objection:** Plaintiff objects to this statement as speculation and assuming facts not in evidence insofar as Defendant's use of the word "[p]resumptively" indicates the statement is not based on Defendant Connelly's personal knowledge, and whether Plaintiff's emails "would have required an additional password" is a factual predicate not proven. Fed. R. Evid. 403; Fed. R. Evid. 602.

74. William Connelly does not recall seeing nude photos on Plaintiff's phone. See Exhibit A, Declaration of William Connelly, ¶ 63.

**Plaintiff's Response: Denied.** This statement is denied insofar as Defendant Connelly had access to Ms. Mills's photos during his search of the device. ECF 226-7, Mills Dep. Tr. 74:6–10. At her deposition, Ms. Mills explained that she "know[s] for sure" that Defendant Connelly looked at her text messages and pictures in her phone because during his search, he held the phone while "facing it where he was looking at it, but [Ms. Mills] could see it too." ECF 226-7, Mills Dep. Tr. 68:2–69:6.

75. William Connelly did not tell Plaintiff to "get the fuck out of" the Narcotics Office and walk across a bridge. See Exhibit A, Declaration of William Connelly, ¶ 64.

**Plaintiff's Response: Denied.** Defendant Connelly shouted at Ms. Mills to "get the f–ck out of" the station and walk "across the bridge" after she asked for her rental vehicle back so that she could return safely to her home in Mississippi. ECF 226-7, Mills Dep. Tr. 74:6–10.